NADENE HAMMON, APPELLANT, v. WILKIE LARUE PEDIGO ET AL., APPELLEES.

115 N. W. 2d 222

Filed May 18, 1962. No. 35138.

*O'Sullivan & O'Sullivan* and *Donald S. Bergquist, Jr.,* for appellant.

*Cassem, Tierney, Adams & Henatsch* and *Lawrence J. Tierney,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The plaintiff, Nadene Hammon, brought this action in the district court for Douglas County against Wilkie LaRue Pedigo and Patrick E. Corrigan, defendants, for damages alleged to have been sustained by the plaintiff and her husband while the plaintiff was riding in an automobile owned and being driven by her husband proceeding west on Dodge Street in Douglas County, when said automobile was struck by a Douglas County

sheriff's automobile being driven by the defendant Pedigo which was proceeding south on Ninetieth Street in Douglas County. At the close of the plaintiff's evidence, the defendants made separate motions for directed verdicts or in the alternative that the plaintiff's petition be dismissed. The defendants' motions for directed verdicts were sustained and the plaintiff's petition dismissed. The trial court rendered judgment in favor of the defendants. The plaintiff filed a motion for new trial, then filed supplemental motions for new trial, one directed to the judgment rendered in favor of the defendant Pedigo and the other directed to the judgment rendered in favor of the defendant Corrigan. All of the motions for new trial were overruled. The plaintiff perfected appeal to this court.

For convenience we will refer to the defendant Wilkie LaRue Pedigo as Pedigo or deputy sheriff; to the car driven by Pedigo as the sheriff's automobile; to the plaintiff's husband as Hammon; and to the plaintiff by her first and last name, Nadene Hammon.

The plaintiff's husband assigned any and all causes of action he might have had as a result of the accident to the plaintiff.

The plaintiff's petition alleged that the defendant Pedigo, a deputy sheriff for Douglas County, was driving an automobile assigned to the sheriff's staff; and that said defendant was guilty of negligent driving which was the proximate cause of the collision. The charges of negligence were as follows: (a) In failing to keep a proper lookout for automobiles which were proceeding westward along and over Dodge Street, and in particular for the automobile driven by plaintiff's husband; (b) in driving his automobile at an unreasonable rate of speed under the circumstances and conditions of the road; (c) in failing to stop at the stop sign; (d) in proceeding into the intersection without ascertaining whether or not said movement could be made with safety; (e) in striking the automobile owned by the plaintiff's hus-

band in which the plaintiff was a passenger at the time of the accident; and (f) in failing to turn his automobile to the right or left in order to avoid striking the automobile in which the plaintiff was a passenger.

The defendants' answer alleged that Pedigo, as deputy sheriff, and Corrigan, as sheriff, were in this instance in the exercise of a governmental function and that the plaintiff had no cause of action against these defendants; that the negligence of the plaintiff was more than slight; that the accident was caused solely through the negligence of the driver of the automobile in which the plaintiff was riding; and that the proximate cause of the accident was the negligence of the driver of the automobile in which plaintiff was riding and the negligence of the plaintiff in the following particulars: (a) In failing to keep a proper lookout for automobiles and especially the emergency automobile which had the siren sounding and the flashing red light in operation; (b) in passing other automobiles that had stopped before continuing into the intersection in order to permit the emergency automobile to pass; (c) in proceeding into the intersection without ascertaining that the movement could be made with safety; (d) in failing to have the automobile under control; (e) in failing to stop or swerve the automobile in order to avoid causing it to collide with the automobile of the defendants; (f) in failing to accord to the defendants' automobile the right-of-way; (g) in violating the statutes of Nebraska in these respects and in failing to use all means at hand to avoid an accident when the plaintiff and the driver of the automobile in which the plaintiff was riding could have and should have avoided said accident; (h) that the plaintiff was negligent in failing to protest against the negligent acts of the driver of the automobile in which she was riding; and (i) that the plaintiff was negligent in failing to warn the driver of the automobile in which she was riding of the hazards in operating the automobile as he did and in failing to warn of the

presence of the emergency automobile in close proximity to the intersection. The defendants denied all allegations of negligence contained in the plaintiff's petition.

The sole assignment of error made by the plaintiff is that the trial court erred in sustaining the motions made by the defendants at the close of the evidence taken in the plaintiff's case-in-chief for directed verdicts or in the alternative for dismissal of the plaintiff's petition, and in rendering judgment in favor of the defendants.

The following sections of the statutes are involved in this case.

Section 39-745, R. R. S. 1943, provides: "The speed limitations set forth in Chapter 39, article 7, shall not apply (1) to vehicles when operated with due regard for the safety of others under the direction of the Nebraska Safety Patrol, any conservation officer, sheriff, member of any police department, or any other police officer, in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violations, (2) to fire department or fire patrol vehicles when traveling in response to a fire alarm, or (3) to public or private ambulances when traveling in emergencies; Provided, the exemption herein shall not apply to bondsmen. This exemption shall not protect the driver of any vehicle exempted herein from the consequences of a reckless disregard of the safety of others."

Section 39-752, R. R. S. 1943, provides: "The driver of a vehicle entering a public highway from a private road or drive shall yield the right-of-way to all vehicles approaching on such public highway. The driver of a vehicle upon a highway shall yield the right-of-way to police and fire department vehicles when the latter are operated upon official business and the drivers thereof sound audible signal by bell, siren or exhaust whistle. This provision shall not operate to relieve the driver of a police or fire department vehicle from the duty to

drive with due regard for the safety of all persons using the highway nor shall it protect the driver of any such vehicle from the consequence of an arbitrary exercise of such right-of-way."

Section 39-753, R. R. S. 1943, provides in part: "Upon the approach of any police or fire department vehicle giving audible signal by bell, siren or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position as near as possible and parallel to the right-hand edge or curb of the highway, clear of any intersection of highways, and shall stop and remain in such position unless otherwise directed by a police or traffic officer until the police or fire department vehicle shall have passed."

The following is also applicable in this case.

"A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." Buie v. Beamsley, 171 Neb. 181, 105 N. W. 2d 738.

This brings us to a summary of the evidence adduced by the plaintiff, except as to the injuries alleged to have been suffered by the plaintiff.

A sergeant of the Nebraska Safety Patrol assigned to the Omaha area testified that part of his duties was to investigate accidents and enforce traffic laws; that he was acquainted with the intersection of Ninetieth and Dodge Streets as it existed in August 1957; that on the north side of the intersection traffic was controlled by a stop sign; that as you drove south on Ninetieth Street to the intersection there were banks on both sides of the street; that the effect of the bank on the east side of Ninetieth Street was to cut down the visibilty of an automobile driver approaching on Dodge Street pro-

ceeding westward; that automobile drivers proceeding south on Ninetieth Street would have their visibility of traffic proceeding westward on Dodge Street cut down due to the bank; that visibility would be cut down by the bank approximately up to the right-of-way, or a little to the north of the right-of-way line of Dodge Street; and that it would be approximately a blind intersection almost to the point of the actual lines of the intersection. This witness further testified that he investigated an accident that took place on August 4, 1957, about 3 p.m., at Ninetieth and Dodge Streets; that he arrived at the scene approximately 10 minutes after the accident occurred; that he talked to the driver of the sheriff's automobile, the deputy sheriff Pedigo; and that at that time both the sheriff's automobile and the automobile driven by Hammon had been moved. This witness had in his possession notes made by him at the time of the investigation of the accident. He testified that Hammon's automobile left skid marks 15 feet long, approximately 2 feet from the north edge of the brick pavement which is the center or passing lane. These skid marks ended approximately at the edge of the pavement or the east line of Ninetieth Street if you drew an imaginary line. He further testified that the automobile driven by Pedigo left skid marks of 9 feet, beginning 7 feet north of the north line of Dodge Street and ending approximately 2 feet into the intersection from the north line of the pavement. This witness further testified that he had a conversation with Pedigo at the scene of the accident. Pedigo told this officer that his speed was unknown, but that he was slowing down for the intersection; and that he applied his brakes, and the automobiles collided. This witness observed the damage to both automobiles. The damage to the Hammon automobile was on the right side, from the front of the front door on back, and the damage to the sheriff's automobile was to the front end. This witness had a conversation with Hammon who stated that

he was proceeding west on Dodge Street at a rate of speed of approximately 40 miles an hour; and that he did not see the red light nor hear the siren on the sheriff's automobile until he got "pretty close" to the intersection. Hammon also said that he saw a red light before he heard the siren; and that he applied his brakes and swerved to the left to endeavor to avoid striking the sheriff's automobile. This witness further testified that daily records were kept of the relative amount of traffic on Dodge Street, classifying such traffic as normal, medium, and heavy; and that this record was kept personally by him, and showed traffic on Dodge Street at 3 p.m., on August 4, 1957, a Sunday afternoon, to be heavy.

On cross-examination this witness testified that Dodge Street is a four-lane highway; that he believed the center lanes on Dodge Street were 10 feet in width and the other two outside lanes were 11 feet in width; that Ninetieth Street is an ordinary, black-topped street, 22 feet wide and consisting of two lanes; that on the day of the accident the pavement was dry, the weather clear, and the accident happened in broad daylight; and that the speed limit on Dodge Street in that area was 50 miles an hour, and on Ninetieth Street the speed limit was 60 miles an hour.

Glen A. Carlson testified that on August 4, 1957, at about 3 p.m., he was driving eastward on Dodge Street toward the intersection of Ninetieth and Dodge Streets; that as he approached this intersection he stopped in the center lane of Dodge Street and waited for traffic to pass by him; that as the traffic cleared, he made a left turn onto Ninetieth Street; that as he was making the left turn and had almost completed it, he heard a siren; that he looked around and saw the sheriff's automobile coming directly over the hill on Ninetieth Street toward him; that three or four automobiles had already been lined up behind the stop sign on the west side of Ninetieth Street occupying the southbound lane of traf-

fic; that he had intended to enter onto the northbound lane of Ninetieth Street; that instead of doing so he pulled off of the driving surface to the right on the east shoulder of Ninetieth Street and stopped; that at this time he was approximately three car lengths north of a projection of the curbline of Dodge Street; that the sheriff's automobile kept coming, moved over into the northbound lane of Ninetieth Street, and continued on toward the intersection; and that the driver of the sheriff's automobile attempted to stop but was unable to do so and struck the Hammon automobile which was on Dodge Street. This witness further testified that the sheriff's automobile first began to slow down when it had passed his automobile which was about three car lengths north of the intersection; that as the sheriff's automobile approached the intersection its driver applied the brakes heavily, slid the wheels, and struck the Hammon automobile; and that after the loud impact the rear end of the Hammon automobile was pushed to the south, slid to the left, then proceeded out of control into the righthand ditch along Dodge Street. This witness further testified that he did not observe the damage to the Hammon automobile because it was in the ditch. He did observe the damage to the sheriff's automobile, and the front end of this automobile was damaged. This witness further testified that the traffic on Dodge Street was heavy immediately prior to his leaving it to turn onto Ninetieth Street; and that after the collision occurred, he noticed that Pedigo was nervous.

Hammon, the driver of the automobile in which the plaintiff was riding, testified that on August 4, 1957, at about 3 p.m., he was driving west on Dodge Street in the outside lane, proceeding to the Valley Lakes, near Valley; that as he approached Ninetieth Street at a speed of approximately 40 miles an hour, he saw automobiles parked on both sides of the approaches to Dodge Street on Ninetieth Street; and that he then saw the emer-

gency automobile coming. He applied his brakes because he found himself right in the way, and then tried to accelerate his speed but was unable to do so. His automobile was struck and knocked into the inside lane and then proceeded into the ditch. He further testified that traffic proceeding east on Dodge Street was still moving following the collision. He was unable to recall if he swerved his automobile to the left prior to the accident. He remembered skidding when he was trying to accelerate his speed, and being struck broadside toward the center rear portion of the automobile. This witness further testified that there were two holes punched in the right side of his automobile and that it was extensively caved in.

Nadene Hammon testified that she was sitting against the door on the right side of the front seat; that as the automobile approached Ninetieth Street she noticed an automobile coming from her right; and that she did not hear the siren but was aware of a light. She said: "And I saw this light, and just about this time my husband put the brakes on and then I was aware that we —oh, I don't know how to express it, but we did not come to a stop. I started forward and I grabbed with one hand on the dashboard and one hand on the little bar * * * Between the window vent and the window that goes up and down, because I knew we were going to be hit." On cross-examination this witness testified that she saw the sheriff's automobile a few seconds before the impact. She testified that she did not give her husband any warning between the time she saw the sheriff's automobile and the impact.

Referring again to section 39-745, R. R. S. 1943, it will be observed that this section confers upon the driver of an emergency vehicle on official business the right to exceed the speed limitations imposed by statute. However, a duty is imposed upon such driver to operate the emergency vehicle in such a manner that he will not do so in reckless disregard to the safety of others.

Section 39-752, R. R. S. 1943, does provide that a driver of an emergency vehicle shall have the right-of-way, and the drivers of other vehicles shall yield such right-of-way to an emergency vehicle on official business. However, this provision does not operate to relieve the driver of such vehicle from the duty to drive with due regard to the safety of all persons using the highway, nor shall it protect the driver of such vehicle from operating the same in an arbitrary manner in the use of such highway.

Most states have adopted statutes relating to the use of emergency vehicles, the duties and obligations imposed upon the drivers of such vehicles, and the obligations and duties of other drivers relating to emergency vehicles. It is true that not all of the statutory provisions of the different states are alike, but some of the same are similar to those enacted by the Legislature of this state. The cases on this subject are very numerous, and different rules are laid down with respect to the operation of emergency vehicles. The factual situation in each case is different. The following cases point to the degree of care to be exercised by the driver of an emergency vehicle, and are applicable to the instant case.

In the case of City of Kalamazoo v. Priest, 331 Mich. 43, 49 N. W. 2d 52, the court held that statutes, relieving drivers of emergency vehicles only from those duties imposed on other drivers which relate to observance of speed limits, heeding traffic and stop signs, and yielding right-of-way, contain no exemption for drivers of emergency vehicles from duties inherent in the exercise of due care.

In Mayor and City Council of Baltimore v. Fire Insurance Salvage Corps, 219 Md. 75, 148 A. 2d 444, it is said: "In holding that operators of authorized emergency vehicles are liable for ordinary negligence under the statutes mentioned, we do not, of course, mean to state that their conduct in the operation of such ve-

hicles is measured by exactly the same yardstick as the actions of the operators of conventional vehicles. The urgency of their missions demands that they repond to calls with celerity and as expeditiously as is reasonably possible. When giving audible signals, they are, within limitations, relieved from speed regulations, rules of the road and certain other provisions. It is generally recognized that firemen when going to a fire often drive at a rate of speed that could not be justified by the ordinary motorist. They are not required to stop for red lights or other stop signals, but may slow down and proceed cautiously through them. However, they are bound to exercise reasonable precautions against the extraordinary dangers of the situation that the proper performance of their duties compels them to create. When dealing with the operation of emergency vehicles, it is particularly appropriate to recognize that negligence and reasonable care are *relative* terms and their application depends upon the *situation* of the parties and the degree of care and vigilance which *circumstances* reasonably impose."

In the case of Montalto v. Fond du Lac County, 272 Wis. 552, 76 N. W. 2d 279, the court said: "In our opinion, the giving of visible and audible warnings may or may not afford a reasonable opportunity to others to yield the right of way, depending upon the circumstances present. And the failure to afford that opportunity may be ordinary negligence or reckless disregard, depending on those circumstances. To adopt the view of the appellants would mean that a lack of 'due regard' would have to amount to a 'reckless disregard' before an ambulance driver could be held negligent as to speed. That the legislature had no such intention is clear from the fact that sec. 85.40 (5), Stats., both requires that a driver operate with due regard for the safety of others and prohibits the exercise of his privilege with a reckless disregard for their safety." See, also, Johnson v. Brown, 75 Nev. 437, 345 P. 2d 754.

In Goddard v. Williams, 251 N. C. 128, 110 S. E. 2d 820, it was said, relating to the conduct of a police officer chasing a traffic violator, where the police officer was involved in an accident, that his conduct is to be examined by another standard. He is required to observe the care which a reasonably prudent man would exercise in the discharge of official duties of a like nature under like circumstances. In citing the Michigan case of McKay v. Hargis, 351 Mich. 409, 88 N. W. 2d 456, the court said: " 'We know of no better standard by which to determine a claim of negligence on the part of a police officer than by comparing his conduct * * * to the care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances.' "

In Gasparac v. Castle (Ky.), 330 S. W. 2d 111, the court said: "The appellants' argument that as a matter of law their ambulance had the right of way and was in a place it had the legal right to be at the time of the collision is subject to qualification. The provision exempting an emergency vehicle from ordinary traffic regulations confers no absolute immunity upon the driver, for it is based on the prescribed conditions. Nor does the preferential status relieve the driver from the duty of having due regard for the safety of other people lawfully using a street or highway. The duty is measured by the danger to be apprehended. Notice and warning to persons required to yield the right of way is essential, and a reasonable opportunity to yield or get out of the way is necessary before they become chargeable with the obligation to give preference to the emergency vehicle. There must be strict observance of the conditions which will exempt an emergency vehicle. When a driver has the preferred right of way, he must be especially alert when he intends to run a red traffic light at a busy street intersection and must take care commensurate with the serious consequences that might follow his failure to do so. He should remember that

other drivers have the right to assume that the red light signal will be obeyed by him unless duly and timely warned to the contrary. The evidence of negligence on the part of the ambulance driver was sufficient to take the issue to the jury."

There is evidence from which a jury might find that Pedigo was driving the sheriff's automobile at an unreasonable and improper rate of speed under the circumstances when he was in the northbound lane; that Pedigo might have been unable to see to his left or east on Dodge Street for westbound traffic on such street; that the sheriff's automobile left skid marks as heretofore shown by the evidence; and that Pedigo driving the sheriff's automobile struck the Hammon automobile with sufficient force to push it over to the center lane on Dodge Street from the right lane where it was traveling before it was struck. There is evidence on the part of the highway patrol officer that the intersection would be blind for southbound vehicles on Ninetieth Street. In addition we make reference to the evidence as heretofore set out.

There is another rule of law that is applicable to the instant case: "When different minds may reasonably draw different conclusions from the same facts as to whether or not they establish negligence or contributory negligence, such issues should be submitted to the jury." Buie v. Beamsley, *supra*.

In the light of the evidence adduced and the above-cited authorities, we conclude that the evidence was sufficient to submit the case to the jury for its determination as to whether or not the driver of the sheriff's automobile was negligent, or whether or not the plaintiff was guilty of contributory negligence. These are questions for a jury to determine.

We reverse the judgment and remand the cause for a new trial.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.