JANET F. LEE, SPECIAL ADMINISTRATRIX OF THE ESTATE
OF DUANE LEE, DECEASED, APPELLANT, V.
CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLEE.

307 N.W.2d 800

Filed July 2, 1981.   No. 43385.

Paul E. Watts, Gerald E. Moran, Mark S. Trustin, and Larry R. Taylor of Watts & Moran for appellant.

Herbert M. Fitle, Omaha City Attorney, James E. Fellows, and Patrick W. Kennison for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

Appellant, Janet F. Lee, administratrix of the estate of Duane Lee, appeals from a judgment of the District Court for Douglas County, Nebraska, in favor of the City of Omaha in this wrongful death action. Appellant's decedent was killed on May 23, 1976, when the

automobile he was driving was struck by a van driven by Terry L. Recek at the intersection of 20th and J Streets in Omaha, Nebraska. Recek at the time was being pursued at high speeds by officers of the Omaha Police Department. On May 16, 1977, appellant filed a claim against the City of Omaha pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1977). The claim was denied by the city on October 24, 1977. On March 23, 1978, appellant withdrew her claim and subsequently filed this action against the City of Omaha and Officers Michael A. O'Keefe, R. Scott Hillabrand, and Howard J. Lawler, alleging that negligence in conducting and in failing to break off the chase before Recek's vehicle collided with Mr. Lee's vehicle was the proximate cause of Mr. Lee's death. After a bench trial on the merits, the District Court found that the officers were guilty of no negligence and entered judgment for the appellee. Appellant assigns this finding as error on appeal. We affirm.

The high-speed chase here involved began at approximately 8:40 p.m. on May 23, 1976, when Officers Hillabrand and Lawler, who were on their dinner break at a fast-food restaurant on 24th between F and G Streets in South Omaha, observed a blue and white van with license plates 59 Comm. 294 which was parked next door at a bar and package liquor store. Officer Hillabrand had last seen those plates on a different van belonging to Terry Recek whose operator's license had been impounded for 30 days by Omaha Municipal Court Judge Cropper on April 29, 1976. The officers then observed a person leave the liquor store and enter the van through the passenger door. Although there is some dispute on the point, the evidence shows that Officer Hillabrand, while still in the restaurant, radioed to Officer O'Keefe to come to the location and "check" this van for "a party" driving on a suspended license. Officer O'Keefe testified that when he received the call from Hillabrand, the name Terry Recek "popped right in my

head" and he proceeded toward the area. In the interim, Hillabrand and Lawler had returned to their patrol car and began following the van after its driver left the liquor store, first going south on 24th Street and then turning west on G Street. On 25th between F and G Streets, the officers used the public address unit in their vehicle to request that Recek pull over and stop, and at that point Recek increased his speed. The officers began pursuing Recek and pursued him back and forth across an approximately 10-block area of South Omaha.

When the chase reached 24th and E Streets, Officer O'Keefe appeared on the scene. He testified that he positively identified the driver of the fleeing van as Recek at that time. For the duration of the chase, all the vehicles involved ignored stops signs and traffic signals, although the officers testified that they slowed at all intersections, drove the wrong way on at least one one-way street, and exceeded the posted speed limit of 35 miles per hour by at least 10 miles per hour, and more at times. In addition, Officer O'Keefe collided with a legally parked vehicle as he left an alley in the course of the chase, and the evidence indicates that there was a near collision at the intersection of 24th and I Streets involving both police vehicles and another vehicle proceeding lawfully at that intersection. Both police vehicles used their sirens and flashing red lights at all times during the chase and continually broadcast the progress of the chase to the central dispatcher at police headquarters, as was standard procedure. Hillabrand and O'Keefe testified that it did not occur to them to cease pursuit, although each testified that they had formed the opinion that Recek would not stop even if the chase continued. After the officers pursued Recek for approximately 7 minutes, Recek ran a stop sign at the intersection of 20th and J Streets and struck the Lee vehicle which was being driven through the intersection. Mr. Lee was killed immediately. Following the collision, Recek fled on foot for a short distance until police caught him. Recek subsequently pled guilty to a

charge of motor vehicle homicide and was sentenced to 1 to 2 years in prison.

Prior to May 23, 1976, Recek had been involved in several incidents with Omaha police in South Omaha, from which it can be concluded that he had a propensity to run from the police. Two weeks prior to this chase Hillabrand and Lawler had engaged in another chase with Recek in the area, but he escaped them after a few blocks. In February 1976 O'Keefe had chased Recek for a distance of 4 or 5 blocks. That chase had resulted in Recek's arrest for a moving violation, disorderly conduct, and improper display of plates. There was additional evidence of other encounters between Omaha police and Recek which indicated a propensity on Recek's part to bait police and then engage them in a chase.

On appeal, appellant contends that, armed with this knowledge of Recek's encounters with police in the past, it was negligence for the police officers to begin the chase since, at the time Hillabrand and Lawler began the chase, Recek was committing no moving violations and it would have been a simple matter for them to later cite him for driving while his operator's license was impounded. Appellant further contends that after Officer O'Keefe positively identified the driver of the fleeing van as Recek, it was negligence on the part of the police to continue the chase since all officers had independently concluded that Recek would not stop. However, the trial court found as a fact that the officers were not negligent, either in beginning or continuing the chase; and in a proceeding brought under the Political Subdivisions Tort Claims Act, the findings of fact by the trial court will not be overturned unless clearly wrong. *Lindgren v. City of Gering*, 206 Neb. 360, 292 N.W.2d 921 (1980). Since the record does not permit us to hold that the finding of no negligence was clearly wrong, we must affirm.

There is no doubt that in Nebraska, and in other jurisdictions as well, the duty of law enforcement officers

to apprehend violators of the law must be balanced with a duty of care to the general public as well. As we stated in *Hammon v. Pedigo,* 173 Neb. 787, 796, 115 N.W.2d 222, 227 (1962): "[A] duty is imposed upon [the] driver [of an emergency vehicle] to operate the emergency vehicle in such a manner that he will not do so in reckless disregard to the safety of others." This duty in Nebraska is imposed by statute. Neb. Rev. Stat. § 39-608 (Reissue 1978) sets out a number of traffic privileges exercisable by emergency vehicles "when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law . . . ." However, subsection (5) of the statute states: "The provisions of this section shall not relieve the driver of such emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect such driver from the consequences of his reckless disregard for the safety of others." Appellee itself has recognized this duty by stating in its standard operating procedure manual: "At no time shall emergency driving conditions necessitate any unsafe driving practices. All speed shall be reasonable and proper.

. . . .

"All pursuits shall be terminated when the risks outweigh the desirability of apprehension.

. . . .

". . . *Driving of the police vehicle under all levels of operation . . . does not exempt the driver from the consequence of reckless disregard for the safety of others.*" Therefore, appellant is correct in her contention that the police owed a duty of due care under the circumstances to persons in the class of persons which included the decedent.

As stated in *Hammon v. Pedigo, supra* at 799, 115 N.W.2d at 228, a police officer pursuing a traffic violator "is required to observe the care which a reasonably prudent man would exercise in the discharge of official duties of a like nature under like circumstances."

The question then becomes whether or not that duty

to appellant's decedent was breached by the officers in this case. The weight of authority holds that this is a question to be decided by the finder of fact. In an action brought under the Political Subdivisions Tort Claims Act, §§ 23-2401 et seq., the factfinding task belongs to the trial court, § 23-2406, and the findings of a District Court in proceedings under the act will not be disturbed on appeal unless they are clearly wrong. *Lindgren v. City of Gering, supra.*

In determining the sufficiency of the evidence to sustain a judgment, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Daniels v. Andersen,* 195 Neb. 95, 237 N.W.2d 397 (1975). Viewed by this standard, we cannot say that the record discloses that the findings of the trial court in this case were *clearly* wrong.

It is, of course, tragic that an innocent third party lost his life as the result of a police chase of an offender who, at the time the chase began, was committing no moving traffic violations and whose only offense at the time he was observed by police was driving while his operator's license was under impoundment. However, the trial court could have believed, from the record, that at the time Officers Hillabrand and Lawler observed the van at the liquor store just prior to the chase, they had not positively identified the driver as Mr. Recek, and, thus, were not certain that the driver would engage them in a chase when they attempted to stop him. By the time Officer O'Keefe joined in the pursuit and positively identified Recek, Recek was then committing or had immediately before committed numerous moving violations. The trial court could have inferred, from the record, that given the light traffic conditions in the area at that time on a Sunday evening, the desirability of apprehension of Recek outweighed the risk of pursuit and that all the officers involved had so concluded. It is

undisputed that both patrol cars used their sirens and revolving red lights during the entire pursuit; and from the testimony, the trial court could have believed that the police vehicles slowed at all intersections and that their speeds were reasonable and proper under the circumstances. It must be remembered that foresight, not hindsight, is the standard by which negligence is determined, and that even an action which in retrospect turns out to have been ill-advised may still have been reasonable under all the circumstances.

Under the standard of review applicable to actions of this kind, we hold that the trial court's findings, on this record, are not clearly wrong and affirm the judgment of the District Court in favor of the appellee.

AFFIRMED.