## Henri Morais and Claudette Morais v. Mark Yee, et al.

[648 A.2d 405]

No. 93-100

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 15, 1994

*Deborah T. Bucknam* and *Lisa A. Warren*, Law Clerk (On the Brief), St. Johnsbury, and *Philip R. Waystack* and *Clare M. Hinkley* of *Waystack & King*, Colebrook, New Hampshire, for Plaintiffs-Appellants.

*John A. Serafino* and *Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendants-Appellees Yee, Tupper, Vermont State Police, Department of Public Safety, and the State of Vermont.

*David A. Barra* of *Hill, Unsworth, Barra & Myers*, Essex Junction, for Defendants-Appellees LaPointe and Town of Pittsburg, New Hampshire.

**Allen, C.J.** Plaintiffs Henri and Claudette Morais appeal the summary judgment granted to defendants in an action alleging

negligence and violation of constitutional rights of their son, Denis Morais. Plaintiffs contend that issues of material fact regarding the constitutional claims and defendants' entitlement to immunity from suit should have precluded the entry of summary judgment. We affirm in part and reverse in part.

On the evening of September 9, 1989, defendant Richard LaPointe, Chief of Police in the Town of Pittsburg, New Hampshire, received a report of an accident involving a single motorcycle with two passengers, one of whom was injured. LaPointe was told the incident occurred on Old Canaan Road, but he was unsure whether the accident had occurred in New Hampshire or Vermont. He searched the New Hampshire portion of the road for accident victims, but found only some glass at one spot on the road. LaPointe was continuing his search on Route 3 when he passed a motorcycle headed south toward the Vermont border. The front wheel of the motorcycle was wobbling and the rider was not wearing eye protection as required under New Hampshire law.[1] Believing this to be the vehicle involved in the accident, LaPointe motioned the rider, Denis Morais, to stop. Plaintiffs assert that LaPointe knew Morais, and offered evidence that the name "Morais" appeared in inch-high letters on the side of the motorcycle's gas tanks. When Morais did not heed LaPointe's direction to stop, LaPointe turned on his lights and siren and pursued him across the bridge into Canaan, Vermont.

Once in Vermont, defendant Mark Yee, a Vermont State Police trooper, joined in the chase by pulling his car between Morais and LaPointe. Plaintiffs assert that Yee also knew the Morais family, having spent considerable time in their local restaurant. Morais led Yee and LaPointe along Route 114, a two-lane road. Witnesses who saw the vehicles pass reported that the nearest cruiser was no more than five feet from Morais' motorcycle, and that Yee and LaPointe were following Morais closely and at too great a speed for Morais to stop safely. Defendants maintain that they pursued Morais in a safe and reasonable manner. The chase continued for nearly twenty-five miles at speeds variously reported between forty and sixty miles per hour; the chase lasted approximately one-half hour.

At some point in the pursuit, defendant William Tupper, also a Vermont State Police trooper, had been notified, and he awaited the motorcade's approach. He positioned his cruiser ahead of Morais, straddling the center line of the road. Tupper drove more slowly than the advancing vehicles, in what he described as an attempt "to contain

---

[1] See N.H. Rev. Stat. Ann. § 265:123 (1993).

the motorcycle between the cruisers." Soon thereafter, they came to a sharp curve in the road. According to the troopers, the motorcycle tried to pass Tupper's cruiser, but in the process Morais lost control, left the road, and struck a rock outcropping, resulting in his death.

Plaintiffs sought relief under 42 U.S.C. § 1983[2] for violation of Morais' constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and sought recovery in negligence for his wrongful death. Defendants Yee, Tupper, the State of Vermont, the Vermont Department of Public Safety, and the Vermont State Police moved for judgment on the pleadings pursuant to V.R.C.P. 12(c). Defendants LaPointe and the Town of Pittsburg, New Hampshire, moved for summary judgment pursuant to V.R.C.P. 56(c). The motions were considered together as motions for summary judgment. See V.R.C.P. 12(c).

The trial court granted defendants summary judgment on the § 1983 claims against the State of Vermont, the Department of Public Safety, the Vermont State Police, and the individual defendants in their official capacities, none of which are "persons" subject to liability under § 1983. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The court also entered summary judgment for the Town of Pittsburg on the § 1983 claim, having determined that plaintiffs had failed to demonstrate constitutional rights violations which could serve as the basis of liability under a theory of respondeat superior. Finally, regarding the common-law negligence claims, the court determined that defendants LaPointe, Yee and Tupper were entitled to qualified immunity, and entered summary judgment accordingly.

Plaintiffs raise two issues on appeal. First, they contend that the trial court erred in ruling that Morais had not suffered violations of his Fourth and Fourteenth Amendment rights. Second, plaintiffs argue that issues of material fact should have prevented the trial court from finding that the individual defendants were entitled to qualified immunity from suit for alleged negligence.[3]

---

[2] Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

[3] The parties have not raised or briefed the question of state law claims against the State of Vermont, the Vermont State Police, the Vermont Department of Public

To be granted summary judgment, the moving party must demonstrate the absence of a genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(c). In the trial court's consideration of the motion, the party opposing the motion benefits from all reasonable doubts and inferences. *State v. Delaney*, 157 Vt. 247, 252, 598 A.2d 138, 141 (1991). However, the opposing party may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. *Murray v. White*, 155 Vt. 621, 628, 587 A.2d 975, 979 (1991).

## I.

Plaintiffs first argue that the trial court erred in granting defendants judgment on the § 1983 claims for alleged violations of Morais' constitutional rights. Specifically, they contend that genuine issues of material fact exist as to whether police violated the decedent's Fourth Amendment right to freedom from unreasonable seizure, and his substantive due process rights under the Fourteenth Amendment. The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons . . ., against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. To establish a violation of the right to be free from an unreasonable seizure, plaintiffs bear the burden of demonstrating that Morais was "seized" within the meaning of the Fourth Amendment, and that the seizure was unreasonable.

At the time of Morais' death, the United States Supreme Court had recently considered the question of whether police pursuit qualifies as a Fourth Amendment seizure in *Brower v. County of Inyo*, 489 U.S. 593 (1989). In deciding whether the decedent had been seized when he collided with a police roadblock after a high-speed chase, the Court differentiated that situation, in which the police create circumstances intended to produce a stop by physical impact, from a significant show of authority intended to induce a voluntary stop. *Id.* at 598. The Court held that "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . ., but only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Id.* at 596–97. A seizure requires "that a

---

Safety, and the Town of Pittsburg, New Hampshire. Therefore, we express no opinion on these claims.

person be stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Id.* at 599. Thus, no seizure occurs in the course of a police chase if the suspect unexpectedly loses control of the vehicle and crashes. *Id.* at 597; accord *California v. Hodari D.*, 499 U.S. 621, 628 (1991) (citing *Brower*, Court explains that possibility of seizure not considered if police showing of authority did not stop individual pursued).

The affidavits offered by defendants in this case uniformly deny that police vehicles came into any contact with Morais in the course of their pursuit. They also demonstrate the absence of any intention on the part of police to force Morais to leave the road and collide with the rock face. Plaintiffs challenge these affidavits with the affidavit of an accident reconstruction expert, who characterized the positioning of the three police cars just before Morais left the road as a "rolling roadblock." After an initial investigation of the scene, the police reports and photographs, and the motorcycle, the expert offered a "preliminary opinion" that the motorcycle was damaged by an impact with an automobile.[4]

Plaintiffs may rely on affidavits of experts to defeat a summary judgment motion, but the affidavit still must meet the Rule 56(e) requirement that the nonmoving party present specific facts demonstrating a genuine issue for trial. *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) (construing F.R.C.P. 56(e)). If an expert

---

[4] The relevant portion of the affidavit consists of the following:

2. I have investigated the accident which is the subject matter of the case . . . . I have reviewed the police reports, and the photographs taken by the police of the scene. I have inspected the motorcycle driven by Denis Morais, have visited the scene twice, taken measurements of the accident scene and taken slide photographs of the scene.

3. Based on my education and experience, and my investigation of the accident, I have concluded as follows:

a. The police officers, Chief LaPointe, Troopers Yee and Tupper, engaged in the use of a rolling roadblock. The purpose of a rolling roadblock is to apprehend or stop a motor vehicle, and is highly dangerous.

b. While I have to do further tests and obtain some further information, it is my preliminary opinion that most of the damage to the motorcycle is far more consistent with it having been struck by an automobile than the motorcycle striking a rock outcropping. The police account of the collision which concludes that the motorcycle flipped in the air upside down, struck the ledge twice before Denis Morais was thrown from the vehicle is inconsistent with the laws of physics and represents collision dynamics I have not seen replicated in my experience of investigating and reconstructing over 1200 collisions.

The affidavit was dated April 13, 1992, seven months after this action was commenced and eight days before the hearing on the summary judgment motion.

presents "'nothing but conclusions—no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected,' such testimony will be insufficient to defeat a motion for summary judgment." *Id.* (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank,* 877 F.2d 1333, 1339 (7th Cir. 1989)). Plaintiffs' affidavit presents only an admittedly preliminary opinion, unsupported by specific facts or any indication of how the opinion was formulated. As such, plaintiffs cannot use its bare allegations to meet their burden of demonstrating a disputed matter of fact. The rules regarding expert testimony cannot be skewed to preclude summary judgment any time a party secures an expert to support its claim. *Id.*

Lacking any other basis to support their theory, plaintiffs have failed to raise a sufficient issue of material fact to support the claim that police seized Morais in violation of his Fourth Amendment rights. Absent a seizure, plaintiffs cannot recover under § 1983 as a matter of law, and defendants are entitled to summary judgment on the Fourth Amendment claim.[5]

Plaintiffs base their second § 1983 claim on an alleged violation of Morais' rights under the Fourteenth Amendment, which provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. For the first time on appeal, plaintiffs argue that even absent a seizure the police pursuit violated his substantive due process rights. Because this argument was not made before the trial court, we do not consider it. *Fitzgerald v. Congleton,* 155 Vt. 283, 295, 583 A.2d 595, 602 (1990). We assess the substantive due process claim as plaintiffs presented it before the trial court.

 In their initial memorandum in opposition to the summary judgment motion and two supplemental response memoranda, plaintiffs discussed the alleged due process violation in terms of allegedly unreasonable use of deadly force in seizing Morais, citing *Tennessee v. Garner,* 471 U.S. 1 (1985). As plaintiffs acknowledged, *Garner* dealt only with the question of the reasonableness of what undisputedly was a seizure under the Fourth Amendment. *Id.* at 7–9. The United

---

[5] Plaintiffs characterize the positioning of defendants' cruisers, with Tupper in front of Morais and Yee and LaPointe following, as a "rolling roadblock." They contend that this constituted unreasonable deadly force and a violation of Fourth Amendment rights against unreasonable seizure under *Tennessee v. Garner,* 471 U.S. 1 (1985). *Garner,* however, proceeded from the established fact that a seizure had occurred when police shot a suspected felon attempting to flee by climbing a fence. *Id.* at 3, 7–9. Therefore, a *Garner* analysis does not apply in this case.

States Supreme Court has made clear, however, that claims of excessive force in the seizure of a free citizen must be analyzed as Fourth Amendment violations, not violations of substantive due process under the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Hence, the substantive due process claim becomes a second Fourth Amendment claim; defendants merit summary judgment because, as discussed above, plaintiffs have failed to show that a seizure occurred.

■ Plaintiffs have also claimed recovery under § 1983 against the Town of Pittsburg, New Hampshire, for an alleged failure to train LaPointe regarding the hazards of high-speed pursuits of suspects. Having concluded that plaintiffs have not demonstrated violations of Morais' constitutional rights, we affirm summary judgment for the Town on the § 1983 claim.

## II.

Plaintiffs also assert that genuine issues of material fact preclude a ruling that defendants LaPointe, Tupper and Yee are entitled to qualified immunity on the claims alleging gross negligence and recklessness. We agree that defendants should not have been granted summary judgment on the state law claims, but conclude that qualified immunity does not apply in this case. Qualified immunity is a judicially created doctrine that shelters state and municipal officials from suit for acts performed in the course of their duties. *Murray*, 155 Vt. at 626, 587 A.2d at 978; *Libercent v. Aldrich*, 149 Vt. 76, 80, 539 A.2d 981, 984 (1987). The doctrine reflects a sound compromise between compensating the injured and affording public officers such as police sufficient freedom to do their jobs. *Murray*, 155 Vt. at 626, 587 A.2d at 978. However, qualified immunity does not extend to situations in which the legislature establishes a clear duty and liability for a breach of that duty.

■ According to 23 V.S.A. § 1015, a "law enforcement officer operating an authorized emergency vehicle in fresh pursuit of a suspected violator of the law" may disregard most of the rules and regulations for the operation of motor vehicles. 23 V.S.A. § 1015(a), (b). The statute also provides, however, that these exemptions "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." *Id.* § 1015(c). The

language clearly mandates that police officers may be held accountable when they fail to conform to this duty. See *Schatz v. Cutler*, 395 F. Supp. 271, 274 (D. Vt. 1975) (construing 23 V.S.A. § 1015). Other jurisdictions have recognized a duty to conduct high-speed chases with due regard for the safety of all persons under substantially similar statutes. See, e.g., *Lee v. City of Omaha*, 307 N.W.2d 800, 803 (Neb. 1981); *Zulauf v. State*, 462 N.Y.S.2d 560, 562–63 (Ct. Cl. 1983). These statutes embody a policy of balancing "the duty of law enforcement officers to apprehend violators of the law . . . with a duty of care to the general public as well." *Lee*, 307 N.W.2d at 803.

■ Section 1015 applies to defendants Tupper and Yee, Vermont State Police officers. As police chief in a New Hampshire municipality, LaPointe is not a Vermont law enforcement officer, but he nevertheless is subject to § 1015. Under New Hampshire law, LaPointe could have conducted fresh pursuit if he reasonably believed that Morais had committed a felony by leaving the scene of an accident involving personal injury. See N.H. Rev. Stat. Ann. § 614:7 (1986). A person who leaves the scene of such an accident without first reporting to police is guilty of a class B felony. N.H. Rev. Stat. Ann. § 264:29 (1993); see also *id.* § 264:25 (procedures required of persons involved in an accident). Vermont law similarly provides that a person who leaves the scene of an accident resulting in serious personal injury commits a felony. See 23 V.S.A. § 1128; see also 13 V.S.A. 1 (defining felony). Like New Hampshire, Vermont permits a state law enforcement officer to conduct fresh pursuit of someone reasonably suspected of having committed a felony, see *State v. Baldwin*, 140 Vt. 501, 508, 438 A.2d 1135, 1138-39 (1981), and extends that power to law enforcement officials of other states pursuing a suspected felon into Vermont. 13 V.S.A. § 5042.

It is uncontested that LaPointe received a report of an accident involving a single motorcycle and resulting in injury to one of the riders. Not long after, he saw Morais on a motorcycle with a wobbling front wheel and motioned to him to stop, but instead Morais sped away. On the undisputed facts concerning LaPointe's knowledge at the time pursuit commenced, we conclude that LaPointe reasonably believed that Morais had left the scene of an accident involving personal injury. In engaging in the pursuit in Vermont, LaPointe acted as a Vermont law enforcement officer. Therefore, LaPointe is subject to the requirement of 23 V.S.A. § 1015 that the pursuit be conducted with reasonable safety.

■ Affording plaintiffs the benefit of all reasonable doubts and inferences on this issue, we believe that sufficient material facts exist to preclude the grant of summary judgment on the negligence claims. The officers knew that Morais was riding a motorcycle with a damaged front wheel at high speed. They had no suspicion that Morais had committed a violent crime, and there is evidence that at least two of the officers knew Morais and his family, which suggests the chase may not have been necessary to apprehend Morais. The chase covered twenty-five miles and lasted nearly one-half hour. The affidavits submitted by the parties demonstrate considerable disagreement about how the pursuit was conducted, in particular the speed of the vehicles, the distance between the motorcycle and the cruisers, and the approach to the turn where Morais' motorcycle left the road. In short, factual disputes, material to the determination whether defendants acted with reckless disregard in conducting the pursuit, preclude summary judgment. Therefore, we reverse and remand for further proceedings on the state law claims against LaPointe, Yee, and Tupper.

*Summary judgment for defendants LaPointe, Tupper, Yee, and the Town of Pittsburg, New Hampshire on the claims of violations of constitutional rights is affirmed. Summary judgment for defendants LaPointe, Tupper, and Yee on the negligence claims is reversed, and the cause is remanded.*

**Johnson, J.,** concurring and dissenting. I dissent from Part I of the Court's opinion, which holds that, on the basis of the facts before the trial court on summary judgment, Denis Morais was not seized within the meaning of the Fourth Amendment to the United States Constitution. I concur with the Court's opinion in all other respects.

My disagreement is based upon the United State Supreme Court decision in *Brower v. County of Inyo*, 489 U.S. 593 (1989). In that case, an individual was killed when the stolen car he was driving at high speed crashed into a police roadblock. His heirs brought a claim under 42 U.S.C. § 1983, alleging that the roadblock had effected an unreasonable seizure. The roadblock in question consisted of an eighteen-wheel tractor-trailer placed across both lanes of the two-lane highway on which Brower was travelling. The tractor-trailer was concealed by placing it behind a curve. It was not illuminated, and to further conceal its presence, a police car with its headlights on was positioned to face Brower's oncoming vehicle. Not surprisingly, Brower struck the roadblock, and he was killed. *Brower*, 489 U.S. at 594.

The Supreme Court held that Brower's freedom of movement was so restricted that a seizure had occurred. *Id.* at 599. In so holding, the Court rejected the contention that the facts were analogous to a police chase in which a police car is merely in pursuit with flashing lights and in which a suspect unexpectedly loses control of his car and crashes. *Id.* at 595, 597.

The Court stated that a seizure results when "there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* at 597. The intent required is not subjective, but objective. Thus, even if the police in *Brower* had "earnestly hoped," *id.* at 598, that Brower would stop his vehicle before hitting the roadblock, the telling circumstance was that the design of the roadblock was such as to produce a collision if voluntary compliance did not occur. *Id.* The Court stated:

> In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was only to be bludgeoned, or by a bullet in the heart that was meant only for the leg. We think it enough for a seizure that a person be stopped by the very instrumentality *set in motion or put in place in order to achieve that result.* It was enough here . . . that . . . Brower was meant to be stopped by the physical obstacle of the roadblock—and that he was so stopped.

*Id.* at 598–99 (emphasis added).

The *Brower* decision sought to distinguish between two ends of a spectrum. On one end, the tractor-trailer roadblock unquestionably resulted in a seizure, even though no actual police contact with Brower occurred and even though Brower might have been able to stop his vehicle prior to the collision with the roadblock. On the opposite end, a mere show of authority, such as pursuit with flashing lights, does not effect a seizure under the Fourth Amendment unless there is physical contact, such as a police car coming into contact with a fleeing vehicle.

In the instant case, we have police conduct that is more than a pursuit with flashing lights, and less than a *Brower*-type roadblock. Plaintiffs term it a "rolling roadblock," but whatever its proper name, it is police conduct that is significantly more restrictive than a mere display of authority. When Morais went off the road and crashed into

an embankment, there were two police cars in pursuit of him, and a third in front, straddling the center line. It is clear that the effect of this strategy was to give Morais virtually no room to maneuver, and that its intent was to bring him to a stop.*

It seems obvious to me that the use of police cars in this manner to bring a motorcyclist to a stop constitutes "a governmental termination of . . . movement through means intentionally applied," *id.* at 597, that is, through an "instrumentality set in motion or put in place in order to achieve that result." *Id.* at 599. Thus, the majority's focus is misplaced. The critical factor in determining whether there was a seizure is not whether the crash was caused by a collision with a police car, but whether, as in *Brower*, the methods used by the police effectively terminated Morais' freedom of movement. Such a restriction of movement may occur, as it did in *Brower*, without any actual, physical contact by the police. One may agree that the police actions in *Brower* were more egregious in the setting up of a fixed and blind roadblock, but the facts here just as clearly demonstrate all of the required elements of a seizure.

To the extent that one may harbor any doubt as to this conclusion, the nature of the police actions may be illuminated by asking what the expected outcome of those actions would have been had no crash occurred. Quite clearly, the expected outcome and, from the standpoint of the police, the desired and intended outcome would have been Morais' apprehension. Thus, the inevitable result of what the police did here was either a peaceable apprehension or a cataclysmic one. Once such a point has been reached, I do not understand how it can be denied that a seizure has been effected. As the United States Supreme Court said in *Brower*, it is not possible,

> in determining whether there has been a seizure in a case such as this, to distinguish between a roadblock that is designed to give the oncoming driver the option of a voluntary stop (e.g., one at the end of a long straightaway), and a roadblock that is designed precisely to produce a collision (e.g., one located just around a bend).

---

* The fact that Morais had no avenue of escape, except submission to authority, distinguishes this case from the Supreme Court's later holding in *California v. Hodari D.*, 499 U.S. 621 (1991). In *Hodari D.*, a suspect fleeing on foot was not seized until he was tackled. Therefore, the cocaine he abandoned while running was not the fruit of a seizure. *Id.* at 629. Unlike Morais, Hodari D. could have, at least theoretically, outrun the police.

*Id.* at 598. I take the meaning of this statement to be that any roadblock, stationary or "rolling," that forces its subject to come to a stop, either voluntarily or by collision, necessarily results in a seizure within the meaning of the Fourth Amendment.

For these reasons, I conclude that a seizure occurred in this case. On remand, I would instruct the court below to determine whether that seizure was reasonable, a question on which I express no opinion at this time.