[Civ. No. 16629.   Second Dist., Div. Three.   Apr. 18, 1949.]

DOROTHEA V. DRAPER et al., Appellants, v. THE CITY
OF LOS ANGELES, Respondent.

Frank H. Love and Newmark & Hamblin for Appellants.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant
City Attorney, and Edwin Shinn, Deputy City Attorney, for
Respondent.

SHINN, P. J.—Dorothea V. Draper and Emery Lattanner
sued the city of Los Angeles, Howard J. Pratt, and his mother

and father for damages arising out of injuries sustained when an automobile driven by plaintiff Draper was struck by a car driven by Howard J. Pratt, plaintiff Lattanner being at the time a guest in the Draper car. The default of Howard J. Pratt was entered. The action was tried to a jury upon the complaint and answer of the city. Motion for nonsuit was denied as well as a motion for a directed verdict; the jury returned verdicts in favor of both plaintiffs and upon motion of the city judgment notwithstanding the verdicts was entered in its favor. The plaintiffs appeal. Each plaintiff sued by a separate cause of action containing identical charges of negligence. The accident happened about 2:30 p. m. Mrs. Draper was driving west on Oxnard Street across the intersection of Colfax Avenue, a north-south street, when the right rear of her car was struck by a car driven by Pratt, who approached from the north on Colfax. The cars were wrecked and came to rest southwesterly from the intersection. Pratt, who was driving a stolen car, was being pursued by Los Angeles Police Officers John E. Welker and William C. Boutelle in a city car. There were boulevard stop signs in all directions. At the intersection Pratt, approaching at some 60 miles an hour, failed to make a boulevard stop. The police car stopped at the intersection. The facts relied upon to establish negligence of the city as a proximate cause of the accident are the following: (1) The police car was not equipped with a siren; (2) the police car was not driven with due regard for the safety of persons using the highway; (3) the actions of the driver constituted an arbitrary exercise of the privilege granted to drivers of emergency cars; (4) the driver of the police car was endeavoring to force Pratt to and into the curb. The answer of the city admitted the car was not equipped with a siren but otherwise denied the acts upon which the charge of negligence was predicated. The evidence disclosed the following: The police car was parked on Tujunga immediately north of Victory Boulevard; Pratt drove westerly across that intersection on Victory Boulevard at about 50 miles an hour, disregarding a boulevard stop sign on the east side of Tujunga; he continued west at about the same speed followed by the police car traveling from 50 to 60 miles per hour. The cars entered the intersection of Victory and Lankershim Boulevard and Colfax Avenue. Lankershim comes in at an angle from the southeast, Colfax runs directly north and south. Both cars turned south on Colfax and travelled three or four blocks to Oxnard Street where the accident took place. There

was testimony that after they entered Colfax, Pratt was seen to look back and increase his speed from 35 to 40 miles an hour to 60 or 70. The speed of the police car was likewise increased. There was testimony by a boy who witnessed the accident that he "dimly" noticed the police car near the Oxnard intersection 100 or 150 feet north of the intersection and that it was traveling slower than the Pratt car, the speed of which he estimated at 60 miles per hour. The driver of the police car testified that as the intersection was approached his car was not closer than 275 feet to the Pratt car and was slowing down for the intersection. There was testimony that there was a southbound car stopped at the intersection and that the Pratt car went to the right of it; also that the police car drew up to the curb and stopped at the intersection and was later parked around the corner on Oxnard. The contention of plaintiffs is that the failure of driver Boutelle to sound a siren constituted negligence and that it was a proximate cause of the collision. It is argued that the failure to have the car equipped with a siren was a violation of the Vehicle Code and that the question whether the failure to sound a siren was a proximate cause of the accident should have been submitted to the jury. Neither contention is sustainable.

Section 454 of the Vehicle Code exempts drivers of authorized emergency vehicles from the provisions of chapter 3 and chapters 6 to 13, inclusive, of division IX of the code "whenever any said vehicle is being driven in response to an emergency call or when used in the immediate pursuit of an actual or suspected violator of the law. . . . Said exemptions shall apply only when the driver of said vehicle sounds a siren as may be reasonably necessary as a warning to others" etc. The exemptions do not relieve the driver of the duty to drive with due regard for the safety of all persons using the highway nor excuse him from the consequences of an arbitrary exercise of the privilege. Section 671 requires that every motor vehicle when operated upon a highway shall be equipped with a horn which shall be blown when reasonably necessary to insure safe operation and provides: "Any authorized emergency vehicle *may* be equipped with a siren of a type approved by the department but such siren shall not be used except when such vehicle is operated in response to an emergency call or when responding to a fire alarm or in the immediate pursuit of an actual or suspected violator of the law, in which said latter events the driver of such vehicle shall sound said siren when

necessary to warn pedestrians and other drivers of the approach thereof.''

The effect of the privilege extended by section 454 is to exempt drivers of authorized emergency vehicles from the duties imposed by chapters 6 to 13 inclusive of division IX of the code which relate respectively to speed laws, driving on the right side of the roadway, starting, stopping and turning vehicles, rules of right of way of vehicles and pedestrians, passing streetcars, making special stops, and stopping, standing or parking. To be entitled to the exemption the driver must sound a siren when the same is reasonably necessary as a warning to pedestrians and others of the approach of the emergency vehicle. Sections 454 and 671 merely authorize the use of sirens on emergency vehicles. It is not required equipment. If there is a siren on the car it must be sounded in some circumstances in order to excuse the failure to observe certain statutory rules that apply to the operation of other vehicles. If the vehicle has no siren, or if it has one and the driver fails to use it when it is reasonably necessary to do so in order to warn pedestrians and other drivers of his approach, he is required to obey the above mentioned traffic laws that apply to the operation of all other vehicles. He can then claim no exemption. ▆ The conduct of Officers Welker and Boutelle was to be judged according to their duties as drivers of a nonexempt car. That the police car was traveling as fast as 60 miles an hour is not disputed but it is, of course, immaterial what its speed may have been, inasmuch as it came to a stop at the intersection of Oxnard. If somewhere on the road it was not driven with due regard to the safety of others who were using the highway, plaintiffs were not among those whose safety was endangered thereby.

After stating their contention that section 671 should be so construed as to require every authorized emergency vehicle to have a siren plaintiffs say: ''The sole remaining question is whether or not the sounding of a siren was necessary to warn other drivers of the approach of the police vehicle.'' One answer, as we have seen, is that it was not necessary that the car be equipped with a siren. Another complete answer is that it was not reasonably or at all necessary for the officers to give warning of their approach to the intersection. There was undisputed evidence that they intended to and did stop when they reached the intersection, and that they parked their car on the north side of Oxnard west of Colfax.

The officers, of course, were not required to warn pedes-

trians or other drivers to keep out of the way of the Pratt car. Pratt's actions were distinct from theirs and placed no responsibility upon them. It is true that he was endeavoring to escape from them and for that reason, perhaps, was driving recklessly but that was his affair, not theirs. Although the pursuit no doubt contributed somewhat to his reckless driving, the officers were under no duty to allow him to make a leisurely escape. There was no evidence whatever that they were endeavoring at the time to force his car to the curb. ■ They owed no duty to plaintiffs except to operate their own car with due care and they fulfilled this duty. The failure to have a siren on the car or to use one under the circumstances was not a violation of law. There was no evidence of negligence on the part of the officers. The court properly held as a matter of law that the negligence of Pratt was the sole cause of the accident. Judgment notwithstanding the verdicts was proper.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.

A petition for rehearing was denied May 6, 1949, and opinion was modified May 9, 1949, to read as above. Appellants' petition for a hearing by the Supreme Court was denied June 16, 1949.