530 P.2d 1144

Carolyn Sue HERDERICK, Individually and as Guardian of the Estates of Glen William Herderick, James Douglas Herderick and Michael Todd Herderick, minors, Appellants,

v.

STATE of Arizona, D. M. McHenry and Penelope D. McHenry, husband and wife, Appellees.

No. 1 CA–CIV 2250.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 23, 1975.

Rehearing Denied Feb. 24, 1975.

Review Denied April 1, 1975.

Langerman, Begam, Lewis, Leonard & Marks, P. A. by Stanley J. Marks and Steven M. Friedman, Phoenix, for appellants.

Snell & Wilmer by J. Michael Hennigan and John J. Bouma, Phoenix, for appellees.

## OPINION

JACOBSON, Presiding Judge.

This appeal involves the determination of the duty owed by a police officer to occupants of a vehicle which he is pursuing because of an infraction of traffic laws.

The appellants, being the wife and surviving children of the deceased, James Dennis Herderick, brought this wrongful death action against appellee, D. M. McHenry, a highway patrolman, and his employer, the State of Arizona. Following discovery procedures, the defendants filed a motion for summary judgment which was granted. This appeal followed.

While the appellants contend that the inferences to be drawn from the facts are in dispute thus precluding the granting of a motion for summary judgment, in our opinion the basic operative facts and any inferences which may properly be drawn therefrom are not disputable.

On the evening of December 21, 1970, Patrolman McHenry was parked in his patrol car across the road from Peter's Corner, a tavern located at the intersection of State Highway 84 and Maricopa Road, in

Maricopa County, Arizona. He observed two men in a 1970 green Ford automobile engage in an altercation in front of the tavern with another man, later identified as Jimmy Stephens. Stephens was attempting to enter the Ford vehicle, but was prevented from doing so, and the Ford accelerated rapidly, spinning its wheels, kicking up dirt and rocks and sped off north on Maricopa Road. Stephens then went to a telephone booth.

McHenry then took off in pursuit of the Ford vehicle, accelerating to approximately 75 miles per hour before he was able to glimpse its taillights. It was raining and visibility was limited. McHenry continued to accelerate and at times reached speeds exceeding 110 miles per hour, but was unable to come closer than one-third of a mile to the speeding Ford. After pursuing the Ford for several minutes, McHenry lost sight of the vehicle around an S-curve. After decelerating to negotiate the curve, McHenry was unable to regain sight of the Ford automobile. Thinking the Ford might have turned off on a side road, McHenry retraced his path and found that the Ford car had failed to make the S-curve and had wrecked. One of the men in the vehicle was dead when found and the other was dying. It can reasonably be inferred that appellants' decedent was a passenger in the Ford vehicle. During the high speed chase, Patrolman McHenry did not engage his siren or flashing lights. There were no other vehicles or pedestrians on the road.

Appellants' theory of liability as to McHenry and the State of Arizona runs thusly: The decedent and the driver of the Ford were in fear of their lives at the hands of Stephens (they had both used the services of Stephens' prostitute and had not paid for these services; Stephens testified he would have killed them if he had

caught them); that it could easily be inferred that both men in the Ford thought they were being pursued by Stephens; that if McHenry had identified himself as a patrolman by the use of flashing lights and siren, they would not have sped away; and that the failure to use the identifying signals caused the driver to drive at a reckless rate of speed to escape the pursuing vehicle proximately causing the death of the decedent.

Because of appellants' theory of liability it becomes the initial obligation of the court to determine whether Officer McHenry owed any duty to the lawbreaker[1] he was pursuing to identify himself as a lawful pursuer. Obviously, in absence of such a duty, McHenry's action or inactions could not give rise to a cause of action on the appellant's behalf. *See* Vivian Arnold Realty Co. v. McCormick, 19 Ariz.App. 289, 506 P.2d 1074 (1973).

■ We first note that the use of flashing lights and siren (the badge of identification appellants contend was lacking here) is controlled by statute. A.R.S. § 28–954(D) (1956) deals with what type of siren and when that siren must be used by "authorized emergency vehicles" it being admitted that patrolman McHenry's vehicle was such an authorized emergency vehicle:

"Any authorized emergency vehicle may be equipped with a siren, whistle or bell, capable of emitting sound audible under normal conditions from a distance of not less than five hundred feet and of a type approved by the department, *but the siren shall not be used except when the vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law, in which latter events the driver of the vehicle shall sound the siren when reasonably necessary to warn pedestrians*

---

1. While appellants argue that their decedent was a passenger in the Ford and thus only the driver of the vehicle could technically be classified as a lawbreaker, for purposes of defining the duty imposed on the patrolman in pursuing the fleeing vehicle we fail to see

how such a distinction operates in their favor under the theory of liability expressed in this case, that is, the failure to identify the pursuer so that the *driver* would slow down or stop, thus avoiding death or injury to the passenger.

*and other drivers of the approach thereof.*" (Emphasis added.)

This statute clearly provides that McHenry's patrol car could be equipped with a siren, but that it could not be used except in the immediate pursuit of an actual or suspected violator of the law, and then only if "reasonably necessary to warn pedestrians and other drivers of the approach thereof." Because factually there were no other drivers or pedestrians on the road during the fatal chase, it is apparent that McHenry was under no statutorily imposed duty to utilize a siren.

■ Appellants argue, however, that the use of a siren cannot be limited to merely "warning" others of the approach of the emergency vehicle because of A.R.S. § 28-775(A)(1) (1956). This statute provides in part:

"Upon the immediate approach of an authorized emergency vehicle

\*     \*     \*     \*     \*     \*

"The driver of every vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway  .  .  . and shall stop and remain in that position until the authorized emergency vehicle has passed  .  .  .."

Because this obligation to stop is placed upon the motorist, appellants argue that the siren is an identifying mechanism as well as a warning mechanism, and thus arguably, there is a statutory duty to identify.

While we might agree that the duty to warn other motorists of the approach of the emergency vehicle of necessity would allow the warned motorist to identify that warning as emanating from an emergency vehicle, we fail to see how A.R.S. § 28-775 imposes a statutory duty on the driver to identify himself to lawbreakers. A.R.S. § 28-775 merely imposes a duty upon the motoring public to "clear the way" for the approaching emergency vehicle and thus is a safety-insuring enactment for the benefit of the motoring public and the emergency vehicle alike. This duty to "clear the way" is consistent with the obligation imposed by A.R.S. § 28-954(D) on the driver of the emergency vehicle to emit the warning "when reasonably necessary to warn pedestrians and other drivers of the approach" of the emergency vehicle.

The obligation of the driver of the emergency vehicle and the obligation of the motoring public to allow the emergency vehicle to proceed unimpeded presupposes that the emergency vehicle will be at times exceeding the prima facie speed limit imposed by A.R.S. § 28-701 (Supp.1973). This the emergency vehicle is privileged to do, but the privilege at times is dependent upon the use of lights and sirens:

"The exemptions granted by this section to an authorized emergency vehicle shall apply only when the driver of the vehicle while in motion sounds audible signal by bell, siren or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle." A.R.S. § 28-624(C) (1956).

■ In our opinion, these statutory provisions taken as a whole allow a patrolman in the pursuit of a law violater to exceed the speed limit; when exceeding the speed limit, his vehicle may be equipped with certain sirens, but flashing lights visible from the front are not required on patrol vehicles; when exceeding the speed limits the patrolman must give warning by siren of his approach to other drivers and pedestrians on the highway; and these other drivers must heed that warning by allowing the patrolman to proceed unhampered by traffic. *See* Draper v. City of Los Angeles, 91 Cal.App.2d 315, 205 P.2d 46 (1949). If a duty to be warned is to be gleaned from

this statutory scheme, it is a duty owed to other drivers and pedestrians using the highway. *See* City of Scottsdale v. Kokaska, 17 Ariz.App. 120, 495 P.2d 1327 (1972). However, "[t]he statutory duty must be owing to the person injured, and not to someone else in order that a violation thereof shall constitute actionable negligence." Massengill v. Yuma County, 104 Ariz. 518, 521, 456 P.2d 376, 379 (1969). We find nothing in the statutory concept of using emergency vehicles on the highways which imposes a statutory duty on a highway patrolman to warn or identify himself specifically to an offending motorist. Finding no such specific duty to the injured party here, a violation, if any, of the general duty to warn the public is not actionable by these appellants.

Having found no statutorily dictated duty to identify himself to offending motorists, can such a duty be found in the general duty owed by an operator of a motor vehicle on the highway? A.R.S. § 28–624(D) (1956) provides:

> "The provisions of this section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall these provisions protect the driver from the consequences of his reckless disregard for the safety of others."

In our opinion, this statutory provision is nothing more than the same duty imposed on every other user of the highways, that is, the duty to use due care. Krauth v. Billar, 71 Ariz. 298, 226 P.2d 1012 (1951).

■ Under appellants' theory of liability it is not the speed of the pursuing vehicle which breaches the duty of care, it is the failure to identify the pursuer that violates this duty. The court could visualize certain factual circumstances where the failure to identify the pursuing vehicle as a police officer could operate to violate the duty of due care. *See* Poole v. City of Louisville, 107 Ga.App. 305, 130 S.E.2d 157 (1963). However, a violation of due care by failing to identify (in essence a failure to take a precaution by warning) would only arise where a reasonably prudent man could reasonably have foreseen that harm would befall the pursued vehicle because of the failure to take the proper precaution of identification. 65 C.J.S. Negligence § 4(3), at p. 490 (1966). While foreseeability is normally a question of fact for the jury, under the facts of this case we hold, as a matter of law, that Patrolman McHenry violated no duty of due care by failing to take the precaution of turning on his flashing lights or activating his siren. This is for the reason that the only basis upon which he could reasonably have foreseen that harm would befall the pursued vehicle by failing to identify himself as a police officer would be the reasonable anticipation that the driver of the pursued vehicle thought he was being chased by someone other than a patrolman. There was simply no evidence presented that Patrolman McHenry could have anticipated or had facts in his possession that would have caused a reasonable man to anticipate that the driver of the pursued vehicle thought he was being chased by anyone. The most that can be said in this regard was the officer's observation that a man was attempting to enter a car, his being thwarted in such an attempt, and the car speeding away with no attempted pursuit by the man who was unable to gain admittance. These facts, as a matter of law, would not impute knowledge to the officer that the pursued thought they were being pursued by anyone. Hence, the necessary element of foreseeability under the facts of this case is missing. For the foregoing reasons, the judgment of the trial court is affirmed.

HAIRE, C. J., and EUBANK, J., concur.