*136 OPINION OF THE COURT
Thomas J. Lowery, J.
At about 9:00 p.m. on October 11, 1978, Louise Baratier, Blanche Peltier and William Peltier, Jr. were killed instantly when their vehicle was struck during a high speed police chase. Damages are sought for their wrongful deaths. The trial was bifurcated and limited to the issue of the State’s liability.
The accident occurred at a train crossing on LaCasse Road in the Town of Mexico, Oswego County, New York. At che time, the decedents’ vehicle was stopped on the west side of the tracks waiting for a southbound freight train to pass. It was dusk, and the weather that evening was clear.
The railroad crossing was at grade with LaCasse Road, a narrow, rural, town road. A hill immediately to the west of the crossing obscured its presence for eastbound motorists. Motor vehicle traffic was controlled by means of a railroad Bashing signal located adjacent to the crossing. In addition, a pair of railroad crossing signs were posted west of the tracks.
Trooper Lance Stowell was on motor patrol duty the evening of the accident. Shortly before 9:00 p.m., while patrolling State Route 58 in the vicinity of LaCasse Road, he observed two oncoming vehicles[1] being operated at what he believed to be an excessive rate of speed. Deciding to gU,e chase, he turned his patrol car around, activated his roof flasher light, and headed off in pursuit of the vehicles.
The drivers of the fleeing vehicles ignored the trooper’s signal and made no attempt to stop. After proceeding a shore distance, they turned off State Route 58 onto LaCasse Road and continued in an easterly direction to the point where the accident occurred. Trooper Stowell followed in hot pursuit[2] at speeds that reached 60 to 80 miles per *137 hour.[3] In all, the chase covered a distance of approximately three miles and took less than five minutes.
Next we turn to a determination of the exact manner in which the accident occurred.[4] In this regard, the proof established that as the vehicles approached the crest of the hill that led to the tracks, the first vehicle was 1,200 to 1,500 feet ahead of the second vehicle. The trooper’s vehicle followed, some 500 to 600 feet behind, and was overtaking the second vehicle. As the first vehicle crested the hill, the driver saw the train and swerved to the left. His vehicle crashed into the train and came to rest along the left side of the road. At no time did he impact the decedents’ vehicle. Seconds later, the second vehicle crested the hill and continued straight into the rear of the decedents’ vehicle. Immediately thereafter, the trooper’s vehicle came over the hill. It struck the train, exploded, and bounded onto-the decedents’ vehicle and then slid down the left side where it came to rest. All three vehicles were thereafter enveloped in flames.
The claimants, contending that Trooper Stowell was negligent in the performance of his duties, seek to hold the State liable for the happening of the accident and the resulting deaths.[5]
The conduct of police officers in pursuit of an actual or suspected violator of the law is circumscribed by section 1104 of the Vehicle and Traffic Law and by the particular departmental training that each officer receives. (Simmen v State of New York, 81 AD2d 398, affd 55 NY2d 924.)
In the present case, no proof was submitted as to the training received by Trooper Stowell with respect to the procedures to be employed while pursuing a vehicle. This *138 omission can be attributed to the State’s position that no pursuit was in progress at the time of the accident. Absent such evidence, we have been deprived of a possible standard by which Trooper Stowell’s conduct could be evaluated.
Insofar as the statute is concerned, it grants to the officer the right to disregard various traffic regulations and maximum speed limits. (See Vehicle and Traffic Law, § 1104, subd [b].) These privileges, however, do not relieve him from the duty to “drive with due regard for the safety of all persons”, nor do they protect him from “the consequences of his reckless disregard for the safety of others.” (Vehicle and Traffic Law, § 1104, subd [e].) This has been interpreted to mean that the immunity accorded can only be denied where there is evidence of an exercise of these privileges in excess of reasonableness under the circumstances. (Strobel v State of New York, 36 AD2d 485, affd 30 NY2d 629; Stanton v State of New York, 29 AD2d 612, affd 26 NY2d 990.) In determining whether the officer has exceeded reasonableness, his actions are to be considered as of the time and under the circumstances in which they occurred and not by subsequent facts or in retrospect. (Simmen v State of New York, supra; Selkowitz v County of Nassau, 58 AD2d 888, affd 45 NY2d 97; Stanton v State of New York, supra.)
When considering Trooper Stowell’s conduct in light of the statute, we find that he failed to exercise his best judgment under the circumstances and displayed a lack of due regard for the safety of others. Despite the fact that his view of the railroad crossing was obscured, he is charged with knowledge of its presence. He is bound to see what by the use of his senses he might have seen. (Weigand v United Traction Co., 221 NY 39.) In this regard, the warning signs were more than sufficient to alert him of the presence of the crossing. Under these circumstances, a reasonable and prudent police officer would have reduced his speed, for it was clearly foreseeable that a train might be passing, in which event, he would be required to bring his vehicle to a safe stop. Trooper Stowell, however, not only failed to reduce his speed, but accelerated his vehicle in an attempt to close the gap between himself and the *139 fleeing vehicle ahead. Hence, his conduct constituted a negligent discharge of his duties.
An argument may be made that section 1104 of the Vehicle and Traffic Law has no applicability, in that the privileges conferred therein do not extend to railroad grade crossings and do not entitle emergency vehicles to violate section 1170[6] or subdivision (e) of section 1180[7] of the Vehicle and Traffic Law. (Cf. Siiuonen v City of Oneida, 33 AD2d 934.) This being the case, the ordinary rules of negligence would apply and we would find that Trooper Stowell was negligent in the operation of his vehicle.
We turn now to the question of whether Trooper Stow-ell’s negligent conduct was a substantial factor in bringing about the happening of the accident and the resulting deaths. In this regard, the evidence established that Blanche and William Peltier died as a result of extensive burns over 95% of their body surface, while Louise Baratier died of a fractured skull caused by a transection brain stem injury.
With respect to Blanche and William Peltier, the nexus between the trooper’s negligence and the fire which resulted in their deaths has been clearly established. Insofar as Louise Baratier is concerned, the task is somewhat more difficult because of the nature of the injury that led to her death. The injury could have resulted from either a single impact or multiple impacts. The proof is insufficient to permit a finding in this regard. It makes little difference, however, since Trooper Stowell must be held responsible for her death in either case. For it is well settled that where several tort-feasors cause injury to another, but it cannot be determined which injuries were caused by which tort-feasor, each is liable for the entire injury. (Hawkes v Goll, 256 App Div 940, affd 281 NY 808; Musgrave v Williams, 239 App Div 802, affd 263 NY 538; see 1 PJI 2d, 2:307.) Further, where it can be found that the injury was caused by the acts of only one tort-feasor, but it is not known which one caused the injury, all are liable absent a showing as to whose act was the cause. (Summers v Tice, 33 Cal 2d 80; Hall v Du Pont De Nemours & Co., 345 F *140 Supp 353; Ann., 5 ALR2d 98; Restatement, Torts 2d, § 433B, subd [3]; see, also, dissenting opn in Thrower v Smith, 62 AD2d 907, affd 46 NY2d 835, app dsmd 47 NY2d 1011.) No such showing was made here.
In sum, we find that Trooper Stowell was negligent, and that such was a substantial factor in bringing about the happening of the accident and the deaths of the three decedents. Moreover, we find that the decedents’ conduct in no way contributed to the accident or their deaths.
Accordingly, we find that the State is liable and direct the clerk of this court to enter interlocutory judgments in favor of the claimants on the issue of liability and to restore claim Nos. 62853, 62900 and 63333 to the Trial Calendar for trial on the issue of damages.

. The first vehicle was a 1978 Pontiac Trans Am, operated by Jay Radley; the second vehicle was a 1978 Chevrolet Camaro, operated by William Cowen.

. At trial, Trooper Stowell denied that he was in pursuit. This is belied by his motor vehicle accident report and by the testimony of Ronald Burke, a disinterested witness. Hence, we find that the trooper was in hot pursuit of the fleeing vehicles at the time the accident occurred.

. Maximum speed limit was 55 miles per hour. (Vehicle and Traffic Law, § 1180, subd |bl.)

. In this regard, the court finds the testimony of Ronald Burke and Doris Kersey to be most credible. It is to be noted that Trooper Stowell and William Cowen had no recollection of the events immediately preceding the accident.

. No issue was raised with respect to Trooper Stowell’s initial decision to undertake the pursuit, which he unquestionably had a right to do. (Thain v City of New York, 35 AD2d 545, affd 30 NY2d 524.) Nor is it claimed that the trooper’s conduct contributed to any recklessness on the part of the pursued drivers, to which liability will not attach! (Jansen v State of New York, 60 Misc 2d 36, affd 32 AD2d 889.)

. Requires motorists to obey a crossing signal that indicates the approach of a train.

. Requires motorist to reduce speed when approaching a railroad crossing.