781 P.2d 1012

Rebecca **LIPPINCOTT, Guardian of Joshua C. Burris, a minor, Plaintiff/Appellant,**

v.

**STATE of Arizona, Defendant/Appellee.**

No. 2 CA–CV 89–0029.

Court of Appeals of Arizona, Divison 2, Department B.

June 20, 1989.

Review Denied Nov. 7, 1989.*

---

* Gordon, C.J., of the Supreme Court, was not present and did not participate in the determination of this matter.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by John H. Westover and Paul C. Miltonberger, Phoenix, for plaintiff/appellant.

Teilborg, Sanders & Parks, P.C. by Winn L. Sammons and John T. Crotty, Phoenix, for defendant/appellee.

## OPINION

FERNANDEZ, Judge.

The question presented in this appeal is whether the state can be held liable for the alleged failure of an off-duty highway patrol officer to take some type of action when he drove by a disabled vehicle that was partially parked on the travelled portion of a state highway. We find that a material fact issue exists and reverse the summary judgment granted by the trial court in favor of the state.

On August 13, 1981, Rebecca Lippincott was a passenger on a motorcycle driven by her then-husband, Clinton Burris, on U.S. Highway 60 traveling east to Wenden, Arizona, from their home in Salome, five miles west of Wenden. A disabled 7-Up truck was parked on the highway about a mile east of Wenden. Approximately six feet of the eight-foot wide truck was in the eastbound lane of the two-lane highway. There were no flares or flags on the highway by the truck, and the truck had no hazard lights flashing. The highway at that point was flat, and the view was unobstructed. At approximately 11:00 a.m., the motorcycle hit the left rear side of the truck, and Lippincott's right leg was traumatically severed below the knee.

Lippincott was in the first trimester of pregnancy at the time of the accident. Appellant Joshua Burris was born in March 1982. He suffers from cerebral palsy, mental retardation and spastic quadriplegia, allegedly as a result of his mother's accident.

According to the accident report, the 7–Up truck had sustained two blowouts, and the driver had gone into Salome to obtain new tires. The accident report also indicates that Burris had turned to wave at people in a vehicle traveling west and did not have time to avoid the truck when he turned back.

Bradford Watkins was an Arizona Highway Patrol officer stationed in Wenden at the time of the accident. He was not on duty that day. Some time before the accident he drove past the disabled truck but did not stop. Watkins was unclear as to whether he was in his patrol vehicle or his personal car at the time he drove by the truck. He testified at his deposition that he drove past the truck, traveled three-quarters of a mile to the Department of Public Safety compound outside Wenden where he lived, and called Phoenix dispatch to report the vehicle. Either during the call or shortly thereafter, someone came to his door to report the accident. He and another officer then went to the scene and rendered assistance until an on-duty patrol officer arrived.

Lippincott filed suit on behalf of her son in July 1985 against the driver and owner of the truck and against the state. Both the truck driver and owner have since declared bankruptcy. The allegations against the state are that it failed to take appropriate steps to maintain a clear and unobstructed highway and to take necessary steps to warn travelers of the parked truck. The state moved for summary judgment in September 1987, and the court granted it in November 1987. The trial court ruled that because Watkins was off duty at the time he saw the truck, he owed no duty to take any action pertaining to it. The court also ruled that he was not acting within the scope of his employment at the time so as to render the state liable under the doctrine of respondeat superior.

Lippincott argues on appeal that it was error to grant summary judgment because the state's duty to maintain highways so they are reasonably safe for travel extends to inaction by off-duty highway patrol officers and because, alternatively, a fact question exists as to whether or not Watkins was on duty at the time he saw the truck.

## STATE'S DUTY TO ACT

We agree with Lippincott's initial contention, that the state has a duty to maintain its roads so they are reasonably safe for travel. *Beach v. City of Phoenix,* 136 Ariz. 601, 667 P.2d 1316 (1983); *Bach v. State,* 152 Ariz. 145, 730 P.2d 854 (App. 1986). Thus, we must determine whether a fact question exists as to whether the state breached that duty.

The duty requires that the state warn of the existence of dangerous conditions on its roads. *Rodgers v. Ray,* 10 Ariz.App. 119, 457 P.2d 281 (1969). The mere existence of a dangerous condition, however, is insufficient to impose liability upon a governmental entity for damages sustained as a result of the condition. "[I]f a roadway should suddenly and without fault of the governmental body, come *by any means* into a condition dangerous to travel, the governmental body is liable for damages occasioned thereby if the governmental body fails to act in a reasonably prudent manner under the circumstances." *Walker v. County of Coconino,* 12 Ariz. App. 547, 550, 473 P.2d 472, 475 (1970) (emphasis in original). Determining whether the public entity has failed to act requires an examination of whether the entity had actual or constructive notice of the condition and whether a reasonable time to act had elapsed after notice was given. *Walker.*

Lippincott bases her argument that the state is liable on her contention that Watkins was required to respond in some manner when he saw the disabled truck and that he failed to do so. Because she makes no claim of independent negligence by the state and because she has not also sued Watkins, her theory of liability is based solely on the doctrine of respondeat superior.

In order to sustain her theory of respondeat superior, Lippincott must show that Watkins was acting within the course and scope of his employment at the time he

drove by the disabled vehicle. *Scottsdale Jaycees v. Superior Court,* 17 Ariz.App. 571, 499 P.2d 185 (1972).

Under Arizona law, an employee is acting within the scope of his employment while he is doing any reasonable thing which his employment expressly or impliedly authorizes him to do or which may reasonably be said to have been contemplated by that employment as necessarily or probably incidental to the employment.

*Ray Korte Chevrolet v. Simmons,* 117 Ariz. 202, 207, 571 P.2d 699, 704 (App. 1977).

Lippincott contends there was evidence that whenever a highway patrol officer occupies a highway patrol vehicle, he or she is considered to be "on duty." In his deposition taken in May 1982 in Rebecca Lippincott's lawsuit against the state, Watkins testified as follows: "I don't remember if I went by the truck in my squad car or my patrol car or if I went by it with my wife. I recall that my patrol car was already being repaired. And I believe I was with my wife when we went by the accident in my personal car." Watkins testified that he had driven to Salome prior to the accident to have some repair work done on his patrol car. Both earlier and later in his first deposition, Watkins stated that he was in his personal vehicle that morning. Earlier he testified, "I had gone by it [the disabled truck] with my wife in my own personal car." Later, in response to the following question, "There is no question in your mind but that you weren't in your patrol vehicle that morning; correct?" he stated, "If I recall correctly, I believe I was with my wife in my personal car, because I remember remarking to her about the truck."

At his second deposition, taken in February 1987 in this case, Watkins testified that he drove to Salome that morning to check on his patrol car and that he was certain the vehicle was already in the garage that morning.

We find that Watkins' uncertain testimony with regard to which vehicle he occupied

at the time he drove by the disabled truck raises a material fact issue on the question of whether he was then acting within the course and scope of his employment.

Therefore, the summary judgment entered in favor of the state is reversed, and the case is remanded for trial.

ROLL, P.J., and LACAGNINA, C.J., concur.