817 P.2d 951

The ESTATE OF Debra ATEN, By and Through its personal representative, Jerry KITCHENS, for and on Behalf of Brandon Dale ATEN, Taine Feist and Jerry Kitchens, Plaintiff/Appellant,

v.

The CITY OF TUCSON, a municipal corporation, Defendant/Appellee.

No. 2 CA–CV 90–0233.

Court of Appeals of Arizona, Division 2, Department B.

March 28, 1991.

Review Denied Oct. 22, 1991.

Arizona Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed July 25, 1990.

Mesch, Clark & Rothschild, P.C. by Tom R. Clark and Scott H. Gan, Tucson, for plaintiff/appellant.

Kimble, Gothreau & Nelson, P.C. by Daryl A. Audilett, Tucson, for defendant/appellee.

OPINION

FERNANDEZ, Chief Judge.

In this appeal from the granting of summary judgment against it, appellant Estate

of Debra Aten argues that it raised a question of material fact on the issue of whether appellee City of Tucson's police pursuit of a fleeing vehicle was conducted in a negligent manner. The pursued vehicle crashed into Aten's vehicle and killed her. We agree that appellant raised a fact issue that precluded entry of summary judgment and reverse.

In the early morning hours of January 18, 1987, three private security officers were driving on Ft. Lowell near First Avenue. A car drove up beside them and the driver gunned the engine, honked his horn, and waved at them as though he wanted to race. When they declined, the driver accelerated, heading east and weaving in and out of traffic. Phillip Rankin, the front passenger in the security officers' car, estimated his speed at 45 to 50 miles per hour. The driver ran a red light at Ft. Lowell and Mountain, then drove up over the curb, went back on the street, sideswiped another car, and continued eastbound.

Rankin's car then began following the man, later identified as Mark Bable. Rankin called the police on a mobile phone and reported the hit-and-run accident. Rankin testified at his deposition that at times Bable was driving 60 to 65 miles per hour. The security officers followed Bable for several miles while he turned on various streets, slowed down and speeded up, and even stopped once and got out of his car for a few moments. Rankin kept the police advised of Bable's movements.

Rankin stated that when they reached the intersection of Glenn and Dodge a police car arrived. The security officers signalled to the officer and pointed out Bable's car. Rankin testified that Bable pulled over and stopped when he saw the police car, and when it pulled up behind him after the officer made a U-turn, Bable "punched it again" and took off eastbound at a high rate of speed.

Another police car arrived, and the two cars chased Bable for several miles on several different streets. Bable continued to drive at high speeds. One of the pursuing officers stated in his affidavit that Bable made a right turn through a red light by driving up on the sidewalk and back on the road around the corner. While he was traveling westbound on Glenn, he ran a red light at Country Club and collided with Aten's vehicle. The evidence was that a police helicopter arrived at the chase scene shortly after the two police cars began their pursuit. Rankin testified that they listened to the police pursuit over a police scanner, and he heard someone say to drop back and let the helicopter handle the chase. The security officers identified Bable at the scene of the accident as the man they had begun following earlier.

Aten's estate filed a wrongful death action against the city on behalf of her son and her parents, alleging that the police failed to comply with department procedures in conducting the pursuit. The city moved for summary judgment, arguing that the police had a duty to pursue Bable, that they exercised reasonable care in meeting that duty, and that their actions, as a matter of law, were not the proximate cause of Aten's death. The trial court granted the motion and this appeal followed.

In its opposition, appellant pointed to the police department procedures manual section on hot pursuits and specifically to the following:

5. *Air Support Unit Assistance*

When the air support unit is used to assist in a hot pursuit, the dispatcher shall be advised by the observer in the airborne unit when visual contact has been made with the suspect vehicle. The dispatcher shall then advise the ground units that the air support unit has visual contact, and the air support unit will then coordinate the remainder of the pursuit. Pursuing ground units will immediately slow down and respond to the directions of the air support unit.

Appellant also presented the affidavit of an expert whose opinion was that the pursuing officers were negligent in not having blocked Bable's car when they first made contact with him. The expert also stated that the pursuing officers were negligent and violated departmental policy in continu-

ing pursuit after the arrival of the helicopter and that the helicopter was negligent in illuminating Bable's car while observing and reporting his movements.

As appellant points out, negligence actions are generally not proper subjects for summary judgment motions, an area in which "as a matter of historical practice and constitutional requirement, the jury is given the most deference in weighing evidence, drawing inferences, and reaching conclusions on questions of negligence, causation, and damages." *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000, 1009 (1990). Summary judgment in such cases is proper only if the plaintiff "presents no evidence from which a reasonable jury could find, directly or by inference, that the probabilities" favor the plaintiff. *Id.* Having noted that, we must first address the city's argument that, as a matter of law, the pursuing officers' conduct was not the proximate cause of Aten's death.

The city contends that the majority of jurisdictions hold, as a matter of law, that a law enforcement officer's pursuit of a fleeing suspect is not the proximate cause of the injuries that suspect inflicts on innocent bystanders as a result of the pursuit. In support of that contention, the city cites a Texas case, *Dent v. City of Dallas,* 729 S.W.2d 114 (Tex.App.1986), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988). The court there reversed a jury verdict for the plaintiffs, in part because of its view that an officer's duty is a general duty owed to the public at large rather than a specific one owed to the person injured, citing among other decisions, *Wilson v. City of Tucson,* 8 Ariz.App. 398, 446 P.2d 504 (1968). Arizona no longer follows that view. *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982). Another basis for the court's holding in *Dent* was the fact that plaintiffs had alleged that the officer was negligent in failing to arrest the suspect before the chase began. The court refused to impose liability upon the officer's exercise of a discretionary duty. In the case at issue, however, appellant does not allege that the officers were negligent in failing to arrest Bable.

The court in *Dent* also held that the sole proximate cause of the accident, as a matter of law, was the suspect's negligence and ruled that peace officers are not insurers of the conduct of fleeing suspects. In support of that ruling, the court cited a number of cases. An analysis of those cases reveals, however, that the issue is not quite so clear cut as it might seem. The two California cases the *Dent* court cited, for instance, held that police officers are not liable for injuries caused by pursuing vehicles based on the officers' failure to activate their sirens. *Pagels v. City and County of San Francisco,* 135 Cal.App.2d 152, 286 P.2d 877 (1955); *Draper v. City of Los Angeles,* 91 Cal.App.2d 315, 205 P.2d 46 (1949). In both cases the courts spoke in terms of the lack of a duty owed to the injured persons. Those cases are apparently no longer the law in California. *City of Sacramento v. Superior Court,* 131 Cal. App.3d 395, 182 Cal.Rptr. 443 (1982). In that case, the court reversed a summary judgment, finding that a fact issue had been raised both as to the pursuing officers' negligence in failing to sound their siren and as to proximate cause.

In *City of Miami v. Horne,* 198 So.2d 10 (Fla.1967), the Florida Supreme Court upheld the entry of summary judgment in a suit for wrongful death resulting from a police pursuit. The court held that an officer is not liable merely because he chooses to pursue a suspect, noting that the officer had a duty to apprehend the offender. In *Brown v. City of Pinellas Park,* 557 So.2d 161 (Fla.App.1990), however, the court distinguished *Horne* on the ground that institution of the chase was alleged to have been negligent in *Horne,* whereas in *Brown,* the chase was alleged to have been negligently conducted. The court also noted that proximate cause is typically a question for the jury, quoting the following: " 'If an intervening cause is foreseeable the original actor may still be held liable. The question of whether an intervening cause is foreseeable is for the trier of fact.' " *Id.* at 177, *quoting Gibson v. Avis Rent–A–Car System, Inc.,* 386 So.2d 520, 522 (Fla.1980).

Three of the cases cited in *Dent* are inapplicable because they involved a suit

either by the pursued suspect's estate or that of a passenger in the suspect's vehicle. *Bailey v. L.W. Edison Charitable Foundation*, 152 Ind.App. 460, 284 N.E.2d 141 (1972); *Blanchard v. Town of Kearny*, 145 N.J. Super. 246, 367 A.2d 464 (1976), *aff'd*, 153 N.J. Super. 158, 379 A.2d 288 (1977); *Silva v. City of Albuquerque*, 94 N.M. 332, 610 P.2d 219 (App.1980). In another case, the officers' alleged negligence was in failing to properly arrest the suspect before the chase began. *Downs v. Camp*, 113 Ill.App.2d 221, 252 N.E.2d 46 (1969). We note, however, that the case was submitted to the jury, including the issue of proximate cause.

The most significant reason why *Dent* is not persuasive, however, is because its holding as to proximate cause is apparently no longer good law. In *Travis v. City of Mesquite*, No. C–8576 (Tex. Dec. 31, 1990) (1990 WL 224258), the Texas Supreme Court reversed a summary judgment entered in favor of two police officers and their employer in a negligence action brought by the survivors of an innocent person killed by a person being pursued by the police. The court ruled that a fact issue existed as to proximate cause, concluding that "there is no special statutory provision excepting police officers from the recited legal standards for proximate cause." *Id.*

Considering the weaknesses in *Dent* and the authorities it relied upon, we find more persuasive the holding in a Connecticut case that "[t]he intervention of negligent or even reckless behavior by the driver of the car whom the police pursue does not, under the emergent majority view, require the conclusion that there is a lack of proximate cause between police negligence and an innocent victim's injuries." *Tetro v. Town of Stratford*, 189 Conn. 601, 607, 458 A.2d 5, 8 (1983), cited in *Travis v. City of Mesquite, supra*. The court in *Tetro* affirmed judgment for plaintiffs, ruling that the issue of proximate cause had been properly submitted to the jury. The allegation there was that the officer violated department procedures governing high speed chases. Other cases hold similarly. *Fiser v. City*

*of Ann Arbor*, 417 Mich. 461, 339 N.W.2d 413 (1983) (summary judgment for city reversed; allegations of negligence in manner pursuit conducted and proximate cause were for jury); *Selkowitz v. County of Nassau*, 45 N.Y.2d 97, 408 N.Y.S.2d 10, 379 N.E.2d 1140 (1978) (jury verdict for plaintiffs affirmed; expert testimony on proper police practices in high speed chase admissible); *Kuzmics v. Santiago*, 256 Pa.Super. 35, 389 A.2d 587 (1978) (nonsuit reversed; allegations of negligence in conducting pursuit and proximate cause were jury questions); *Mason v. Bitton*, 85 Wash.2d 321, 534 P.2d 1360 (1975) (summary judgment for city and state reversed; fact issues existed on conduct of pursuit).

■■■ That approach also comports with Arizona law that the issue of proximate cause is ordinarily left to the jury. *Gosewisch v. American Honda Motor Co.*, 153 Ariz. 400, 737 P.2d 376 (1987); *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 706 P.2d 364 (1985); *Tennen v. Lane*, 149 Ariz. 94, 716 P.2d 1031 (App.1985). "[I]t is only when reasonable persons could not differ that the court may direct a verdict on the issue." *Markowitz*, 146 Ariz. at 358, 706 P.2d at 370. We do not find that to be the case here. "The defendant's act or omission need not be a 'large' or 'abundant' cause of the injury; even if defendant's conduct contributes 'only a little' to plaintiff's damages, liability exists if the damages would not have occurred but for that conduct." *Robertson v. Sixpence Inns of America*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990), *quoting Ontiveros v. Borak*, 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983). We conclude that the city is not entitled to summary judgment as a matter of law on the issue of proximate cause.

■■■ We also find no merit to the city's other arguments in support of the summary judgment. Its contention that police officers have a duty to pursue those who present a danger to the public is irrelevant. Appellant does not contend that the police should not have pursued Bable; it contends instead that the police conducted the pursuit negligently. The city's contentions that one of the pursuing officers had no

duty to pull her vehicle in front of Bable's and that appellant's expert misstated the facts in his affidavit filed in opposition to the summary judgment motion are not proper issues in this appeal. Our obligation is only to determine whether a material fact issue exists so as to preclude summary judgment; it is not appropriate for us to engage in weighing the facts presented or in determining the credibility of witnesses. *Elson Development Co. v. Arizona Savings & Loan Association,* 99 Ariz. 217, 407 P.2d 930 (1965).

■ Finally, the city argues that A.R.S. § 28–624 does not impose liability in this case. That section permits emergency vehicles to exceed speed limits, to disregard regulations governing turning and direction of movement, to park in no parking areas, and to go through stop signs and red lights when responding to emergency calls or pursuing a law offender. Subsection D of that section states:

> The provisions of this section do not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons nor do these provisions protect the driver from the consequences of his reckless disregard for the safety of others.

A.R.S. § 28–624(D). The city contends that the statute does not render drivers of emergency vehicles the insurers of the safety of others who are at risk because of the conduct of fleeing suspects. That argument is nothing more, however, than a restatement of its arguments that there is no proximate cause as a matter of law.

The dissent asserts that § 28–624 restricts the liability of municipalities and/or law enforcement officers to those situations in which the officer has been grossly negligent in the pursuit. We note initially that the city has not made that argument on appeal. We believe it is unwise to reach a decision on such an issue unless it has been properly raised and briefed.

We also believe that the issue has already been decided in Arizona. We disagree with the dissent that the statement in *Herderick v. State,* 23 Ariz.App. 111, 530 P.2d 1144 (1975), that the statute imposes the same duty imposed on all highway users, is dictum. The court's conclusion as to the meaning of the statute was an essential part of its analysis on whether the officer owed a duty to the decedents.

That conclusion is also consistent with the conclusion reached in a previous case. In *Ruth v. Rhodes,* 66 Ariz. 129, 185 P.2d 304 (1947), the supreme court interpreted a predecessor statute to § 28–624. The statute in that case read as follows:

> The speed limitations set forth in this article shall not apply to vehicles when operated with due regard for safety under the direction of the police in the pursuit or apprehension of persons charged with or suspected of any violation of law.... This exemption shall not however protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others.

Ariz.Code Ann.1939 § 66–105. Holding that the trial court was correct in refusing to instruct the jury that the statute required the plaintiff to show a higher degree of negligence in order to recover against the police officer, the court explained:

> The intent of section 66–105 ... is not to hold patrolmen to less than the usual degree or standard of care. Instead, by its very words the section holds him to 'due regard for safety' making exception only for the speed at which a patrolman's job sometimes requires him to travel. The last sentence of this section upon which defendants so heavily rely to carry their point refers only to the speed exception, and is by its own terms so limited. It would breach all rules of construction to apply the 'reckless disregard' standard to any but this speed exception.

66 Ariz. at 137, 185 P.2d at 309–10.

We conclude that appellant has raised a material fact issue that precludes entry of summary judgment.

Reversed and remanded.

HOWARD, J., concurs.

**152**

ROLL, Judge, dissenting.

I respectfully dissent.

Today, a majority of this court holds that a public municipality may be liable for injuries caused by a grossly negligent third party seeking to elude apprehension by the police, even in the absence of proof that pursuing law enforcement officers were also grossly negligent.

### FACTS

Shortly after midnight on January 18, 1987, Mark Bable came to the attention of three individuals who were operating a motor vehicle in the vicinity of Ft. Lowell and First Avenue in Tucson. These individuals, Phillip and Troy Rankin and Bob Sherman, noticed Bable when Bable "revved up" the engine of his vehicle and swerved toward the Rankin vehicle. Thereafter, Bable proceeded to weave in and out of traffic, requiring other vehicles to take evasive action, and having near collisions with three to four other vehicles. In the vicinity of Mountain and Ft. Lowell, the Rankins and Sherman observed Bable run a red light, hop a curb, strike a sign, re-enter the roadway, and collide with another vehicle, then flee the scene of the collision. At that point, they notified the police department of Bable's actions. Police officers in the vicinity received a report of a probable drunk driver who had engaged in speeding, running red lights, and a hit-and-run accident. As the Rankins and Sherman followed Bable, they observed Bable continue to speed, weave "all over the road," and force other vehicles off of the road. He raced through a residential area.

Eventually, Tucson Police Officer Gehm encountered Bable as Bable was eastbound on Glenn near Dodge. Bable accelerated. Soon, a police helicopter joined the pursuit. Bable ran another red light at the vicinity of Glenn and Swan while travelling southbound toward Grant Road, turned westbound on Grant Road where he accelerated in excess of over 65 miles per hour, then turned north on Dodge from the westbound left turn lane of Grant Road. Ultimately, Bable went west on Glenn and accelerated through a red light at the intersection of Glenn and Country Club, where he struck a vehicle driven by innocent third party Debra Aten, who died as a result of the collision.

While being treated at a hospital, Bable indicated that he did not realize that the police were chasing him and that the first thing that he remembered was seeing emergency lights and being transported to the hospital. On these facts, the trial court granted summary judgment in favor of the City of Tucson.

### STANDARD OF REVIEW

In reviewing summary judgment, this court views the evidence in the light most favorable to the party opposing the motion, and all favorable inferences fairly arising from the evidence must be given to the opposing party. *Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990); *Wisener v. State,* 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979). Summary judgment is appropriate where "the claim or defense ha[s] so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). The moving party must be entitled to judgment as a matter of law. *Gulf Ins. Co. v. Grisham,* 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980); *Auto–Owners Ins. Co. v. Moore,* 156 Ariz. 184, 185, 750 P.2d 1387, 1388 (App.1988). Questions of law are reviewed *de novo. Tovrea Land & Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966); *Aldabbagh v. Arizona Dept. of Liquor Licenses & Control,* 162 Ariz. 415, 418, 783 P.2d 1207, 1210 (App. 1989).

Summary judgment may be affirmed on appeal on grounds not explicitly considered below. *Gibson v. Boyle,* 139 Ariz. 512, 517, 679 P.2d 535, 540 (App.1983). We are obliged to affirm the trial court's ruling if the result was legally correct for any reason. *State v. Perez,* 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984).

## TORT LIABILITY OF CITY FOR ACTIONS OF LAW ENFORCEMENT OFFICERS

The Estate of Debra Aten argues that the City of Tucson is liable for negligence on behalf of the law enforcement officers who pursued Bable. In order for tort liability to vest, there must be a duty, a breach of that duty, a breach of duty constituting the proximate cause of the plaintiff's injuries, and damages. *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983); *Wisener,* 123 Ariz. at 149, 598 P.2d at 512.

In the matter before us, plaintiff argues three theories of negligence: (1) Several minutes before the time that the accident ultimately occurred, Officer Gehm should have blocked Bable's vehicle at Alvernon and Glenn when Bable was eastbound; (2) The police helicopter should not have illuminated Bable's vehicle, because the illumination "may have contributed to his continued flight ...;" and (3) Ground units should have ceased or slowed down pursuit of Bable once the air support unit had Bable in view.

While law enforcement officers previously owed no duty to third persons, *Wilson v. City of Tucson,* 8 Ariz.App. 398, 446 P.2d 504 (1968), Arizona and the majority of states no longer follow that view. *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982).

The police have a duty to intervene. *Lippincott v. State,* 162 Ariz. 171, 173, 781 P.2d 1012, 1014 (App.1989); *Roll v. Timberman,* 94 N.J.Super. 530, 229 A.2d 281, 283 (1967); *DeWald v. State,* 719 P.2d 643, 649 (Wyo.1986). Officers also have a duty to operate emergency vehicles with due regard for others.

In *Dent v. City of Dallas,* 729 S.W.2d 114, 116–17 (Tex.App.1986), the Texas Court of Appeals stated:

> The question of a police officer's liability to an innocent third party, who is injured or killed in an accident involving a suspect being pursued by the officer, has never been addressed in Texas. In the jurisdictions where this question has arisen, the majority of courts have found no liability on the part of the officers.

The rationale for these decisions is that the sole proximate cause of the accident is the suspect's negligent conduct and not the officer's conduct in electing to pursue the lawbreaker. Simply stated, courts will not make police officers the insurers for the conduct of the suspects they pursue.

The majority focuses upon the citations given in support of the above-quoted proposition. I believe, however, A.R.S. § 28–624 is dispositive of this matter.

In Arizona, the duty owed is prescribed by A.R.S. § 28–624, authorizing emergency vehicles to disregard traffic regulations. Paragraph D of the statute reads:

> The provisions of this section do not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor do these provisions protect the driver from the consequences of his reckless disregard for the safety of others.

A number of courts have interpreted nearly identical statutory language as that contained in § 28–624(D) as restricting liability of municipalities and/or law enforcement officers to those situations in which a police officer is grossly negligent in the pursuit of a law violator.

Only one prior Arizona case, *Herderick v. State,* 23 Ariz.App. 111, 530 P.2d 1144 (1975), has interpreted the standard of care imposed by A.R.S. § 28–624(D).

In *Herderick,* in upholding summary judgment in favor of the state in a lawsuit brought by the survivors of a passenger who died in a one-vehicle accident, Division One of this court held that the officer's failure to activate emergency equipment while pursuing the vehicle in which Herderick rode was not the proximate cause of the accident. In dicta, Division One observed that the duty imposed upon operators of emergency vehicles by A.R.S. § 28–624(D) "is nothing more than the same duty imposed on every other user of the highways, that is, the duty to use due care." 23 Ariz.App. at 115, 530 P.2d at 1148. This interpretation of the statute by Division One is instructive but not binding on this

court, *Scappaticci v. Southwest Savings & Loan Association,* 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983); *Higgins v. Fireman's Fund Ins. Co.,* 157 Ariz. 594, 596, 760 P.2d 594, 596 (App.1988), *aff'd,* 160 Ariz. 20, 770 P.2d 324 (1989).

The majority also relies upon *Ruth v. Rhodes,* 66 Ariz. 129, 185 P.2d 304 (1947), and the supreme court's interpretation of former Ariz.Code Ann.1939 § 66–105. That statute, however, was specifically entitled "When speed limit not applicable." A.R.S. § 28–624, the statute governing the matter before us, expressly authorizes emergency vehicles not only to travel in excess of posted speed limits, but to proceed past stop signs and stop signals and to "[d]isregard regulations governing direction of movement or turning in specified directions." A.R.S. § 28–624(B). Accordingly, *Ruth* is not persuasive.

North Carolina's Supreme Court, in a case of first impression interpreting a statute nearly identical to Arizona's, concluded that a law enforcement officer was only liable for gross negligence:

> This Court faces for the first time the determination of the proper standard of care where the injuries complained of do *not* result from the officer's vehicle colliding with another person, vehicle, or object in the chase or apprehension of a law violator. Under these circumstances, we conclude that the applicable standard is whether the officer's conduct constitutes gross negligence.

*Bullins v. Schmidt,* 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988). The court based its analysis on the language of the statute which establishes as the public policy of North Carolina that "upon a showing of the reckless disregard of the safety of others the officer loses the benefit of the statute," and the officer may be liable for damages proximately resulting from such gross negligence. 322 N.C. at 583, 369 S.E.2d at 603.

Other courts in other states have reached similar interpretations. In *Mitchell v. State,* 108 A.D.2d 1033, 486 N.Y.S.2d 97 (1985), the court interpreted New York's Vehicle and Traffic Law § 1104(e). That law exempts emergency vehicles from traffic laws, but not "from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." N.Y. Veh. & Traf. § 1104(e).

In *Mitchell,* a third party collided head-on with a vehicle being pursued by an officer. It was undisputed that the officer, in contravention of departmental regulations, was not using his siren and emergency lights. The court nevertheless concluded that the state was not liable because the officer's conduct did not constitute reckless disregard for the safety of others:

> [The officer's] failure to [use his lights and siren] at that time, even if considered negligent, cannot be said to have risen to the level of reckless disregard for the safety of others, which is the standard required to find him responsible for the accident.

108 A.D.2d at 1034–35, 486 N.Y.S.2d at 99. *See also Selkowitz v. State,* 55 A.D.2d 709, 389 N.Y.S.2d 45 (1976).

In Illinois, a statute virtually identical to A.R.S. § 28–624 has been interpreted as precluding liability absent a finding of wilful and wanton negligence on the part of the police officer. In *Breck v. Cortez,* 141 Ill.App.3d 351, 95 Ill.Dec. 615, 490 N.E.2d 88 (1986), an appellate court upheld summary judgment in favor of the police on the question of wilful and wanton negligence, stating:

> We are aware that the question of whether conduct amounts to wilful and wanton negligence is normally a question of fact for determination by the jury, ... and that summary judgment should not be granted if there is a genuine issue as to any material fact.... The question of wilful and wanton misconduct may, however, be determined by the court ... if all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary determination based on that evidence could ever stand.

141 Ill.App.3d at 359–60, 95 Ill.Dec. at 620–21, 490 N.E.2d at 93–94 (citations omitted).

*Breck* is particularly instructive because of its factual similarity to the matter before us. The court noted that in order for the police officer's acts "to be characterized as wilful or wanton, they must have been committed with actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others." 141 Ill.App.3d at 360, 95 Ill.Dec. at 621, 490 N.E.2d at 94. The court then went on to analyze the conduct of the officers during their chase of the suspected law violator, which resulted in injury to a third party:

> In evaluating the conduct of the police officers here, we must be mindful of the reason for their pursuit of Cortez. The evidence in the instant case, even when viewed in its aspect most favorable to plaintiffs, establishes that Cortez was driving his car in a reckless manner and endangering the public before the police began to chase him.... Cortez did not deny that this occurred. He testified only that he could not remember whether it happened or not.... Under these circumstances, a failure on the part of the police to act would have presented a substantial threat to public safety.

141 Ill.App.3d at 360, 95 Ill.Dec. at 621, 490 N.E.2d at 94; *see also Thornton v. Shore*, 233 Kan. 737, 666 P.2d 655 (1983).

The majority suggests that the interpretation given by appellate courts of other states to similarly-worded statutes should not be considered because the city has not advanced such an argument on appeal. The city, however, is the appellee. We are required to affirm the trial court if it was correct for any reason, whether elaborated upon or not. *Perez, supra; Gibson, supra.*

Compelling reasons exist for limiting governmental and/or police officers' liability in pursuit situations to those cases in which reasonable people could conclude that the officer has operated an emergency vehicle in a grossly negligent fashion. "The law allows police pursuit of fleeing violators as a matter of public policy; the benefit of apprehending these individuals outweighs the ordinary risks inherently in-volved in such pursuit." *Kelly v. City of Tulsa*, 791 P.2d 826, 829 (Okl.App.1990). Not only is police pursuit permissible, it may well be a duty imposed upon law enforcement officers. *Lippincott, supra.*

In determining whether a law enforcement officer exceeded the standard of care enunciated in the statute, the officer's "actions are to be considered as of the time and under the circumstances in which they occurred and not by subsequent facts or in retrospect." *Zulauf v. State*, 119 Misc.2d 135, 138, 462 N.Y.S.2d 560, 562 (Ct.Cl.1983), *aff'd, Baratier v. State*, 110 A.D.2d 1042, 489 N.Y.S.2d 1019 (1985). By the time the police officers' pursuit in this case commenced, Bable had already engaged in reckless conduct, having forced other vehicles from his path, jumped curbs, hit a sign and sideswiped another car. The pursuit occurred at 1:30 a.m. At the time the fatal collision occurred, Officer Gehm was approximately 100 yards behind Bable and Officer Richards was approximately 200 yards behind Bable. These undisputed facts disprove plaintiff's claim that the officers violated a regulation requiring that police officers slow down once air support units have established visual contact with fleeing suspects. Bable, nevertheless, continued to drive dangerously until he ran the red light and collided with Debra Aten's vehicle. None of the three theories advanced by plaintiff, whether viewed individually or cumulatively, can reasonably be said to constitute gross negligence by the police. *See Breck*, 490 N.E.2d at 94; *Bullins*, 369 S.E.2d at 603 ("gross negligence is wanton conduct done with conscious or reckless disregard for the rights and safety of others").

In *Thornton*, the Supreme Court of Kansas commented on the "due care" standard in a Kansas statute similar to A.R.S. § 28–624:

> The privileges and immunities granted to police officers ... would indeed be hollow if the test of due care ... were extended to include the acts of the fleeing motorist whom the officer is trying to apprehend. The net effect of such an extension would be to make the officer the insurer of the fleeing violator, be he

or she a mentally deranged person, prison escapee, murderer, drug addict or drunk.

233 Kan. at 745, 666 P.2d at 661–62.

## CONCLUSION

A.R.S. § 28–624 constitutes a legislative determination that authorized emergency vehicles should not be subject to liability unless and until operators of such vehicles are grossly negligent. The legislature set out the privileges and the standard of care by which police officers are governed in such instances. The standard, when applied in this case, reveals a lack of any evidence in the record before the trial court that could demonstrate gross negligence on the part of the police, and therefore, summary judgment was appropriate.

I respectfully dissent.