705 P.2d 486

**STATE of Arizona, Appellee,**

v.

**Robert Wells NELSON, Appellant.**

**No. 1 CA–CR 7668.**

Court of Appeals of Arizona,
Division 1, Department D.

May 31, 1985.

Reconsideration Denied Aug. 7, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Georgia B. Ellexson, Asst. Atty. Gen., Phoenix, for appellee.

Larry H. Layton, San Fernando, Cal., Aspey, Watkins & Diesel by Bruce S. Griffen, Flagstaff, for appellant.

## OPINION

GRANT, Judge.

Appellant Robert Wells Nelson (defendant) was found guilty by a jury of unlawful flight from a pursuing law enforcement vehicle, in violation of A.R.S. § 28–622.01 and driving while intoxicated (DWI), in violation of A.R.S. § 28–692(A), (B). The trial court granted defendant's motion for a new trial on the DWI charges. He was sentenced on the felony flight to a three-year probationary term.

On appeal, defendant has raised a number of issues concerning the preservation of the breath sample obtained after the intoxilyzer test was administered to him and the failure of the state to satisfy necessary foundational requirements before the results of the intoxilyzer test were admitted at trial. The state argues, and we agree, that there was ample independent evidence of defendant's flight from the police officer.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE FELONY FLIGHT CONVICTION

Defendant was charged with a violation of A.R.S. § 28–622.01 which provides:

Any driver of a motor vehicle who wilfully flees or attempts to elude a pursuing official law enforcement vehicle which is being operated in the manner described in subsection (C) of § 28–624 is guilty of a class 5 felony. Such law enforcement vehicle shall be appropriately marked showing it to be an official law enforcement vehicle.

The following facts were presented at trial.

When a patrol officer in Needles, California, observed defendant's vehicle pull away from a stop sign at a high rate of speed, at approximately 10:30 p.m., he decided to follow. Although the speed limit in the area was 25 miles an hour, the police officer was traveling 55 miles an hour, and defendant's vehicle was pulling away from him. The officer turned on the police vehicle's overhead lights when he was approximately 50 yards behind the defendant. After defendant's vehicle made a slow, weaving motion to the left, then corrected itself, the officer turned on the siren. The defendant's vehicle turned off onto a dirt road, creating a large amount of dust as he traveled. The officer kept visual contact with the defendant's tail lights and testified that the flashing lights on his police vehicle were brighter than defendant's tail lights. As the police officer followed, defendant made a quick left-hand turn, traveling parallel to the police officer. The police officer testified that at that point defendant's vehicle was traveling at his side, then suddenly made a turn right in front of his vehicle and was only one car length in front of him. The officer testified that he had on the flashing lights and siren the entire time.

The police officer continued to follow defendant's vehicle as it entered a concrete roadway in a residential area and turned into a driveway. He had followed the defendant for over six-tenths of a mile and testified that he believed that the defendant was trying to evade him. When the officer pulled up beside defendant's vehicle at the residence, he lit up defendant's vehicle with his spotlight. The defendant stumbled out of his vehicle and raised his hands to shoulder height without any request to do so by the police officer.

The officer testified that from three feet away he could detect the strong odor of alcohol on defendant's breath, that he had slurred speech and bloodshot eyes. Defendant was unable to produce his driver's license and misspelled his middle name. He also volunteered to the officer that he had ten years of college and yet was unable to correctly write the alphabet when requested to do so. He failed all coordination tests given to him by the officer who stopped him and another officer who later arrived on the scene. Defendant also admitted to drinking six to eight beers during the evening before driving.

As noted above, the defendant was granted a new trial on the DWI charges and the only conviction before this court on

appeal is the conviction of the class 5 felony, unlawful flight from pursuing law enforcement vehicle, A.R.S. § 28–622.01. Even assuming that the results of the intoxilyzer test were improperly admitted at trial, which we need not decide in this appeal, we do not think a reversal of defendant's conviction for felony flight is required. *See Oshrin v. Coulter*, 142, 109, 688 P.2d 1001 (1984). The erroneous admission of the results of breathalyzer tests can be harmless. *See Estes v. State*, 358 So.2d 1050, 1054 (Ala.App.1977) *cert. denied*, 358 So.2d 1057 (Ala.1978) (in a vehicular homicide case, the court rejected the defendant's argument that the erroneous admission of breathalyzer test results was reversible error); *City of Highland Park v. Block*, 48 Ill.App.3d 241, 6 Ill.Dec. 285, 362 N.E.2d 1107 (1977) (disregarding the evidence of the breathalyzer test, the court held there was sufficient evidence to support the defendant's conviction for DWI); *People v. Cutler*, 86 Mich.App. 118, 272 N.W.2d 206 (1978) (although recognizing the importance of scientific evidence at trial, the court held that the erroneous admission of breathalyzer test results in a vehicular manslaughter case was harmless error), *cf. State v. Frederick*, 129 Ariz. 269, 271, 630 P.2d 565, 567 (App.1981).

The evidence of intoxication, the officers' observations and defendant's conduct, would have been admissible, even though not corroborated by the intoxilyzer test. The evidence of flight was overwhelming.

■ The introduction into evidence of the intoxilyzer test reading would have added little to the charge under A.R.S. § 28–622.01. There was other evidence that showed defendant was intoxicated, that the officer's siren and lights were flashing for approximately six-tenth's of a mile, that defendant's vehicle traveled parallel to the officer, that the officer traveled within 10 feet of the defendant's vehicle, and that defendant knew that he was behind a police officer—according to his statements made when he viewed the video tape—although we note he attempted to explain away the significance of them on

redirect examination. Finally, defendant admitted to drinking six to eight beers over the course of the evening. We do not think that there is a reasonable probability that had the results of the intoxilyzer test not been admitted, that the verdict would have been different. Therefore, we do not find reversible error in admitting the intoxilyzer test results. *State v. Clow*, 130 Ariz. 125, 127, 634 P.2d 576, 578 (1981).

### ELEMENTS OF THE OFFENSE UNDER A.R.S. § 28–622.01

Defendant argues that the state failed to introduce sufficient evidence to identify the police vehicle in this case as an "authorized emergency vehicle." He also argues that even assuming that the police vehicle was properly identified in this case, A.R.S. § 28–622.01 has no application to non-Arizona vehicles. The state argues that defendant has misread A.R.S. § 28–622.01 to include a requirement that the state must prove the law enforcement vehicle was an "authorized emergency vehicle."

■ A.R.S. § 28–622.01 requires proof that: (1) the defendant was driving a motor vehicle (2) that he wilfully (3) fled or attempted to elude (4) a pursuing official law enforcement vehicle (5) which was being operated with both lights and siren activated and (6) that the law enforcement vehicle was appropriately marked showing it to be an official law enforcement vehicle. *State v. Schultz*, 123 Ariz. 120, 121, 597 P.2d 1023, 1024 (App.1979). The reference in A.R.S. § 28–622.01 to subsection C of A.R.S. § 28–624 relates solely to the manner of operation of the law enforcement vehicle. There is no requirement that the police vehicle was an "authorized emergency vehicle." There was evidence presented at trial which established all of the above elements of the offense.

■ The police officer testified that he was on duty as a member of the San Bernardino County Sheriff's Department in Needles, California when the pursuit began. The officer was also a commissioned law enforcement officer in Arizona. We note that the statute does not, by its language, apply solely to Arizona law enforce-

**250**

ment vehicles. We agree with the state, that to read the statute narrowly, limiting it to Arizona law enforcement vehicles, would certainly place a premium on attempts to "outrun" pursuing police in bordering states in order to reach a safehaven inside the State of Arizona. Such a holding would not be consistent with other statutes recognizing the practical effect of interstate travel. *See e.g.,* A.R.S. § 13–3832 (authorizing a peace officer of another state to enter and continue within the state in close pursuit of a person in order to arrest him for a felony committed in the other state). This statute seeks to punish conduct which demonstrates that the offender has wilfully chosen to create a potential danger to both life and property of others. The statute clearly punishes unreasonable conduct in resisting law enforcement activities. *Cf., State v. Mather,* 28 Wash.App. 700, 626 P.2d 44 (1981) (interpreting the felony flight statute of the State of Washington). We hold that the felony flight statute, A.R.S. § 28–622.01, applies to any and all law enforcement vehicles pursuing a motor vehicle in the State of Arizona.

Judgment affirmed.

MEYERSON, P.J., and HAIRE, J., concur.