871 P.2d 717

**STATE of Arizona, Appellee,**

v.

**William Michael FOGARTY, Appellant.**

**No. 1 CA–CR 91–0630.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 24, 1993.

Review Denied May 3, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

The Law Offices of John W. Rood, III by John W. Rood, III, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

The defendant, William Fogarty, was convicted by a jury of the crimes of aggravated assault, a class 3 dangerous felony, and unlawful flight from a pursuing law enforcement vehicle, a class 5 felony. He was sentenced to concurrent terms of five years for the aggravated assault and one year for flight.

The defendant was charged with violating, Ariz.Rev.Stat.Ann. ("A.R.S.") section 28–622.-01, which we will refer to as the "felony flight statute." It provides in part: "Any driver of a motor vehicle who willfully flees or attempts to elude a pursuing official law enforcement vehicle which is being operated in the manner described in subsection C of § 28–624 is guilty of a class 5 felony." Subsection C of section 28–624 refers to the use of an audible signal like a siren and a red or red and blue light.

■ The defendant contends that the facts do not establish that he was "fleeing or attempting to elude" a police car. He does not develop the argument extensively, but we assume that his position is based upon the fact that this conduct does not fit the usual fact pattern of a felony flight. Here, the defendant simply refused to stop on command and neither took any evasive action nor led the police on a high-speed chase.

■ We hold that the defendant's conduct did violate A.R.S. section 28–622.01. In our opinion, any refusal to stop on command of an officer who is *in a police car* violates the felony flight statute because of the potential for personal danger inherent in vehicular pursuit, even if that pursuit does not attain excessive speeds or involve reckless driving.

The case arose as follows. A Glendale police officer, at approximately 10:00 p.m. on a night in early September, noticed the defendant's pickup truck in a forty-miles-per-hour zone passing other traffic on the road. The officer estimated the truck's speed at fifty miles per hour. Traffic was fairly heavy, and the officer decided to stop the defendant for speeding.

The officer pursued the defendant, catching up with him as the defendant slowed for a red light. The light turned green, and the defendant drove on. The officer estimated the defendant's speed at that point at forty-five miles per hour. The officer turned on his flashing red lights, and when the defendant failed to stop after several blocks, turned on his siren. The defendant continued on, stopping at stop lights and otherwise obeying the traffic laws. At one stop light, the police officer turned off his siren and heard the defendant yell, "Leave me alone, what do you want me for?" At one point, the officer estimated that the defendant's speed again reached as high as fifty miles per hour. The officer called in the defendant's license plate number and continued to follow the defendant but did not attempt to block him or cut him off. When the defendant reached the Glendale city limits, the police officer gave up the chase, and the defendant was later arrested at his home. The officer never considered himself involved in a high-speed chase, and he did not think the defendant was driving recklessly. Later, when several officers went to the defendant's home to arrest him, he assaulted one of them.

The legislature has not defined "flee" or "elude" as those terms are used in A.R.S. section 28–622.01, nor is there any legislative history pertaining to the statute. We will therefore, construe the statute according to the fair meaning of its terms and in a way to promote justice and effectuate its objective. *State v. Tramble*, 144 Ariz. 48, 51, 695 P.2d 737, 740 (1985).

We begin by acknowledging the factors which favor the defendant's position. One does not usually think of what the defendant did here—normal driving—as either eluding or fleeing a follower. The term "elude" gives us less concern in the context of this case than does the term "flee." An "attempt to elude" connotes adroit maneuvers. The Oxford English Dictionary, vol. 5 (2d ed. 1989), defines "elude" as "To slip away from, escape adroitly from (a person's grasp or pursuit, *lit.* and *fig.*); to evade (curiosity, vigilance, etc.)." In the context of the operation of a motor vehicle, such might include quick turns, driving with the lights off, driving where the pursuing vehicle could not follow, or attempting to hide. The officer testified that the defendant did not make any quick turns or other evasive maneuvers and that he never turned off his lights. After checking the truck's license plate number and learning the defendant's home address, the officer determined that the defendant was following a fairly direct route home. The defendant made no attempt to hide his truck once he got home. The evidence does not support a finding that the defendant attempted to elude a pursuing law enforcement vehicle.

The term "flee" usually, but not always, connotes speed. The Oxford English Dictionary, vol. 5 (2d ed. 1989), lists the following meanings of the word which might be apropos in this context:

1. To run away from or as from danger; to take flight; to try to escape or seek safety by flight. Also, *to flee away, out,* and *to flee for it*....

2. To hasten for safety or protection....

3. To withdraw hastily, take oneself off, go away. Also with *away*. Const. *from out of*....

4. To make one's escape, get safely away....

5. To pass away quicky [sic] and suddenly; to disappear, vanish. Also with *away*....

. . . .

7. To run away from, hasten away from; to quit abruptly, forsake (a person or place, etc.)....

While the defendant's conduct does fit the definition numbered four above, "[making] one's escape [or getting] safely away," extensive research fails to reveal any decision in any jurisdiction, except for cases where a defendant's conduct fit the definition of "elude," in which a prosecution for flight from a pursuing law enforcement vehicle did not involve a high-speed chase.

In our opinion, the fact that the defendant may have exceeded the speed limit by as much as ten miles per hour while the officer was following him is not, in and of itself, the determinative point on the issue of whether the defendant was engaged in flight. We say this because it is so commonplace for motorists to drive fifty miles per hour in a forty-miles-per-hour zone that such conduct says little about the defendant's intent and does not amount to the kind of conduct—a high-speed chase—that the statute was arguably designed to discourage. Indeed, driving in excess of the posted speed limit merely creates a rebuttable presumption that the speed is unreasonable or imprudent. A.R.S. § 28–701. *Gibson v. Boyle*, 139 Ariz. 512, 519, 679 P.2d 535, 542 (App.1983). Having acknowledged these points in the defendant's favor, we turn to an analysis of the purposes of the statute.

■ The statute appears to have been designed to serve two objectives. First, it was intended to insure that motorists stop on command so that, for example, the police can issue a citation, issue directions, or conduct an investigation. Second, it was intended to proscribe conduct which might lead to vehicular accidents which would endanger the police, the public, or the person commanded to stop. *See State v. Nelson*, 146 Ariz. 246, 250, 705 P.2d 486, 490 (App.1985).

One of these purposes is served by a misdemeanor statute which partially overlaps the felony flight statute. Arizona Revised Statutes Annotated section 28–1075 provides:

A. The operator of a motor vehicle who knowingly fails or refuses to bring his motor vehicle to a stop after being given a visual or audible signal or instruction by a peace officer or duly authorized agent of a traffic enforcement agency is guilty of a class 2 misdemeanor.

This provision is obviously designed to require motorists to stop on command so that the police can issue directions or citations or conduct an investigation. The misdemeanor statute does not, however, as forcefully serve the second purpose of the felony flight statute, namely, to proscribe the potentially dangerous conduct that may ensue where two vehicles are involved. The defendant, in continuing to drive when a policeman *in a police car* ordered him to stop, engaged in behavior that had a greater *potential* for harm than would a mere refusal to stop for a policeman on foot, or for a policeman in a police car who elects not to pursue. An automobile, when misused or driven by a person whose attention is divided or who is distracted, can be a dangerous instrumentality. So too, the failure of a motorist to stop may provoke a pursuer into dangerous driving. Had the officer in this case, for example, not behaved with circumspection, an attempt to stop the defendant might have escalated into a situation in which people were actually endangered. Indeed, the very use of a siren and red lights may cause confusion to motorists and dangerous disruption to traffic.

Analogies to other areas of the criminal law illustrate that the *potential* for increased harm justifies an increase in the degree of punishment for a crime. *See, e.g., State v. Garza Rodriguez,* 164 Ariz. 107, 111, 791 P.2d 633, 637 (1990) (immediate possession or availability for use of a weapon increases the severity of robbery even though victim is unaware of weapon because robber has created a life-endangering environment); *State v. Gardella,* 156 Ariz. 340, 341, 751 P.2d 1000, 1001 (App.1988) (burglary of a residence is punished more severely than burglary of a nonresidential structure because entry into a residence gives rise to the *possibility* of confrontation and possible injury); *see also* Rudolph J. Gerber, *Criminal Law of Arizona* at 224 (1978) ("The distinction between residential and nonresidential structure reflects the increased threat to safety associated with illegal entry to a residence.").

The defendant also argues that the trial court erred in not dismissing the dangerous nature allegation on the aggravated assault charge. This issue was decided against the defendant by the Arizona Supreme Court in *State v. Lara,* 171 Ariz. 282, 830 P.2d 803 (1992). Accordingly, the trial court did not err on this point.

This court has, pursuant to A.R.S. section 13–4035, fully reviewed the record for fundamental error. After doing so, we find that no reversible error was committed in these proceedings.

The judgments of conviction and sentence are affirmed.

GERBER, P.J., and TOCI, J., concur.