**512**

29 P.3d 287

### In re JOEL R.

### No. 2 CA–JV 01–0004.

Court of Appeals of Arizona,
Division 2, Department A.

Aug. 21, 2001.

Barbara LaWall, Pima County Attorney, By Verla R. O'Donovan, Tucson, for State.

Susan A. Kettlewell, Pima County Public Defender, By Walter Palser, Tucson, for Minor.

### *OPINION*

BRAMMER, Presiding Judge.

¶ 1 The minor, Joel R, born March 31, 1984, was adjudicated delinquent after a hearing on one count of fleeing from a law enforcement vehicle, a class five felony. He also admitted violating the conditions of his

probation in an earlier matter. The juvenile court ordered him committed to the Arizona Department of Juvenile Corrections (ADJC) to be held in a Level IV secure facility for a minimum of six months. On appeal he claims an essential element of the charge against him was lacking because the sheriff's vehicle that pursued him did not have its siren activated, as he claims A.R.S. §§ 28–622.01 and 28–624(C) require.

¶ 2 Viewed in the light most favorable to upholding the juvenile court's findings, *In re Maricopa County Juvenile Action No. JV–123196*, 172 Ariz. 74, 834 P.2d 160 (App.1992), the evidence established that, in the early morning hours of October 22, 2000, a Pima County deputy sheriff, driving a marked sheriff's cruiser, observed a vehicle driven by Joel turn onto a "dead end cul-de-sac" in a residential area. Following the vehicle into the cul-de-sac, the deputy saw that the vehicle had been parked on the curb. A passenger had emerged and was watching the deputy. Joel subsequently got out of the vehicle. The deputy testified he was suspicious because "it did not seem that they belonged at any house."

¶ 3 The deputy left the cul-de-sac, drove approximately 100 yards to the north, turned his car around to face the direction of the cul-de-sac, and turned its lights off. As he watched, Joel's vehicle emerged from the cul-de-sac with its lights off and traveled south approximately twenty-five feet before its lights came on. Recognizing the vehicle as the one he had just observed in the cul-de-sac, the deputy attempted to stop it by activating his emergency lights. The vehicle accelerated rapidly, eventually reaching a maximum speed of approximately fifty-five miles per hour through the residential neighborhood as the deputy pursued with his red and blue lights flashing as well as his bright, white "take down" lights illuminating the vehicle. Joel made a total of four turns, his tires screeching as he went around corners. By the officer's estimate, the chase lasted from "a minute-and-a-half to a minute 45 seconds." At no point did the deputy activate his siren, because, he testified:

It wasn't necessary. There was no traffic to alert that he was coming forward. We were the only two cars moving on the street, and due to the fact that it was 3 o'clock in the morning, I didn't see any sense in waking up 50 or 70 families.

¶ 4 Joel contends use of the deputy's siren was an essential element of the offense of fleeing from a law enforcement vehicle. He bases his argument on the following language in *State v. Nelson*, 146 Ariz. 246, 249, 705 P.2d 486, 489 (App.1985):

A.R.S. § 28–622.01 requires proof that: (1) the defendant was driving a motor vehicle (2) that he wilfully (3) fled or attempted to elude (4) a pursuing official law enforcement vehicle (5) which was being operated *with both lights and siren activated* and (6) that the law enforcement vehicle was appropriately marked showing it to be an official law enforcement vehicle.

(Emphasis added.) Division One's language in *Nelson* mirrors the wording of a trial court's jury instruction we quoted in *State v. Schultz*, 123 Ariz. 120, 597 P.2d 1023 (App. 1979).

¶ 5 However, the statute itself, § 28–624(C), to which § 28–622.01 refers,[1] requires the driver of an authorized emergency vehicle to use a siren or other audible signal only "as reasonably necessary." Moreover, the specific issue decided in *Nelson* was whether

---

1. Section 28–622.01, A.R.S., provides:
   A driver of a motor vehicle who wilfully flees or attempts to elude a pursuing official law enforcement vehicle that is being operated in the manner described in § 28–624, subsection C is guilty of a class 5 felony. The law enforcement vehicle shall be appropriately marked to show that it is an official law enforcement vehicle.
   Section 28–624(C), A.R.S., provides:
   The exemptions authorized by this section for an authorized emergency vehicle apply only if the driver of the vehicle while in motion sounds an audible signal by bell, siren or exhaust whistle as reasonably necessary and if the vehicle is equipped with at least one lighted lamp displaying a red or red and blue light or lens visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red or red and blue light or lens visible from in front of the vehicle.

the offense described by § 28–622.01 required proof that the law enforcement vehicle was an "authorized emergency vehicle" as that term is used in § 28–624. Division One held that § 28–622.01 contained no such requirement. The court's statement that § 28–622.01 requires proof that the law enforcement vehicle "was being operated with both lights and siren activated" was, therefore, pure dictum.

¶ 6 The same is true of *Schultz*, the other case Joel cites in support of his contention. In *Schultz*, the issue was whether § 28–622.01 required proof that the pursuing law enforcement vehicle was "appropriately marked showing it to be an official law enforcement vehicle," when there was evidence that the police officer had activated "blinking red lights and revolving dome lights on top of his police vehicle as well as the siren and flashing headlights." *Schultz*, 123 Ariz. at 121, 597 P.2d at 1024. We held that § 28–622.01 does require proof that the vehicle was appropriately marked as an official law enforcement vehicle. Because the officer in *Schultz* had activated his siren as well as multiple sets of lights, we did not address the specific question whether use of the siren is a separate, essential element of the offense.

¶ 7 It is clear from the plain language of § 28–624(C) that drivers of authorized emergency vehicles—and, by extension, law enforcement officers under § 28–622.01—must only use a siren or other audible warning "as reasonably necessary." Division One reached the same conclusion in *Simkins v. Pulley*, 116 Ariz. 487, 491, 569 P.2d 1385, 1389 (App.1977), ruling that "the language of

the statute itself sets forth the parameters of the duty 'as may be reasonably necessary.'" In so holding, the *Simkins* court refused to give dispositive weight to dictum in an earlier case, *Herderick v. State*, 23 Ariz.App. 111, 114, 530 P.2d 1144, 1147 (1975), declining to apply literally the gratuitous language in *Herderick* that "when exceeding the speed limits [a] patrolman must give warning by siren of his approach to other drivers and pedestrians on the highway." We likewise reject the dictum in *Nelson* in favor of the clear wording of the statute itself.

¶ 8 Joel has not challenged the deputy's testimony that it was unnecessary under the circumstances to use his siren, and the record supports the juvenile court's finding that Joel knowingly fled from and attempted to elude a pursuing law enforcement vehicle. The record reflects that the state established the requisite elements of the offense under §§ 28–622.01 and 28–624(C) and supports the trial court's implicit finding that it was not reasonably necessary for the deputy to have activated his siren under these specific circumstances.

¶ 9 The juvenile court's orders of adjudication and disposition are affirmed.

FLÓREZ, J., and ESPINOSA, C.J., concurring.